## Davis *versus* Titusville and Oil City Railway Co.

1. Where a railroad company permanently locates its road and enters
   upon the land for the purpose of constructing it without objection from
   the owner of the land, this is an appropriation of the land for the pur-
   poses of the road, and vests the right to damages in the owner of the
   land, though he lease it to another before a bond, as security for damages,
   is filed, and before the road is constructed.

2. The record of a deed conveying the rights and franchises of a railroad
   company, which includes the right of way for the road, is competent
   evidence as to the right of way without the production of the original
   deed.

October 5th, 1886.   Before GORDON, PAXSON, TRUNKEY,
STERRETT, GREEN and CLARK, JJ.   MERCUR, C. J., absent.

ERROR to the Court of Common Pleas of *Venango county:*
Of October Term 1885, No. 192.

This was a proceeding instituted by Henry R. Davis against
the Titusville and Oil City Railway Co., under the Act of
1849, to recover damages for land taken by said company for
railroad purposes. Upon petition viewers were appointed who
made report.   From this report Davis appealed.   On motion,
the court directed that the issue be tried by a jury in the form
of an action of trespass, Davis being the plaintiff and the rail-
way company the defendant.   Plea not guilty.

The facts as they appeared on the trial before TAYLOR, P. J.,
sufficiently appear from the charge and the opinion of the
Supreme Court.

The charge of the court was as follows :

The plaintiff, Mr. Davis, claims to recover damages which
he alleges he has sustained by reason of the defendant railway
company appropriating the right of way over his lease, on the
Caldwell farm on Oil Creek, near Pioneer.   The railway com-
pany has taken 920 feet in length and 30 feet in width across
this lease.   By so doing, the plaintiff alleges that the company
prevent him from using the said right of way for oil purposes,
has destroyed some of his roads, rendered others useless, made
it necessary for him to build new roads; and further, in mak-
ing their grade and completing their road across his lease they
broke his pipe-line, spilt his oil and injured some of his prop-

erty, and also have hindered him in the proper development of his oil lease. He says he had a lease of this property many years ago, which he lost, but finally procured a lease from the oil company to cover the time he had operated on their farm, which was from 1875; and further says that he and Mr. Chapin, the superintendent of the farm, had operated there before that time.

If the defendant railway company took this land and obstructed the lease when he was there operating on it, he is entitled to recover such damages as he has sustained, not only the direct damages to the property, but such secondary damages as resulted from the occupancy of the land by the railway company. [But, gentlemen, in order for the plaintiff to recover damages he must have some legal rights. It may be that he has sustained injuries by reason of this railroad being built there, and have no legal remedy; courts and juries apply legal remedies where legal rights exist.

The defendant company alleges that this, their road, was permanently located where it now is across this strip of land on the plaintiff's lease, and grading done thereon in 1870 or 1871.] (Seventh assignment of error.)

You will remember the evidence for yourselves. [Positive testimony is entitled to a great deal more weight than negative testimony. A credible witness who comes on the stand and swears he saw and knows a thing to be so, is entitled to a great deal more weight than a dozen witnesses who come and say merely that they did not see it.] (Eighth assignment of error.)

[If you believe the evidence of Mr. Douglass and the man who was superintendent of the construction of this road and actually did the work there, and the testimony of Mr. Stephenson, the engineer, who testifies as to the location of this road, and find that this railroad was located where it now is in 1870, and the grading done in 1870 and 1871 over this lease of the plaintiff's, and the plaintiff did not take his lease of the land until 1875 or 1876, then Mr. Davis cannot recover in this case, for he took his lease subject to the defendant company's rights there.] (Ninth assignment of error.)

Unless you find that in the construction of this road some unnecessary damage was done to the property of Mr. Davis, for which damage he could recover here.

On the other hand if you find there was no permanent location of the railroad across the plaintiff's lease until after he got his lease, then he would be entitled to recover damages as we before stated to you.

The plaintiff presented *inter alia* the following point:

If the jury believe the testimony of the plaintiff's witnesses

[Davis *v.* Titusville and Oil City Railway Co.]

there was no final and permanent location of a railroad or track by the Titusville & Petroleum Centre Railroad Company, and plaintiff is not barred from claiming such damages as he may have sustained from the defendant.

Answered in the negative. (Fourth assignment of error.)

The defendant presented the following points:

1. The Titusville & Petroleum Centre Railroad Company was a corporation duly organized on the 30th day of September, 1870, with the power to build and operate a railroad between the city of Titusville and Petroleum Centre; and by judicial sales, and by virtue of a due and legal organization thereunder, all the rights, franchises and property of said railroad company became vested in the Titusville & Oil City Railway Company, the defendant in this suit, including its route and rights of way.

Affirmed. (Fifth assignment of error.)

2. The uncontradicted and unimpeached evidence in this case shows that the Titusville and Petroleum Centre Railroad Company located its route through the farm of the Caldwell Oil Company, and entered upon the same for the purpose of construction in the winter of 1870–71, before the plaintiff had any lease of the land in question, and that the present track of the defendant through the land covered by said lease is laid upon said located route. If the jury believe this evidence the plaintiff cannot recover in this suit.

Affirmed if you further find that no unnecessary damage was done in the constructing of the road. (Sixth assingment of error.)

On the trial the defendant offered in evidence without producing or proving the original, record of a deed conveying the rights and franchises, including the right of way of the Titusville & Petroleum Centre R. R. Co., to the defendant.

Objected to because such an instrument cannot be proved by the mere production of the record. It is not within the recording Act.

Objection overruled, deed admitted in evidence, exception noted, and bill sealed. (Second assignment of error.)

Verdict for the defendant and judgment thereon, whereupon the plaintiff took this writ, assigning for error those portions of the charge included within brackets, the answer of the court to the plaintiff's and to the defendant's points, and the admission in evidence of the deed above referred to.

*M. J. Heywang* for plaintiff in error.—The record of the deed should not have been admitted in evidence: Fitter *v.* Shotwell, 7 W. & S., 14; Susquehanna Canal Co. *v.* Bonham, 9 W. & S., 27.

[Davis v. Titusville and Oil City Railway Co.]

There may be a survey and location of a route for a railway without such an appropriation as precludes the owner from using his land; and such is the case when the railway corporation has made no compensation or given security to condemn the land, and after the first feeble and sporadic efforts indicating a desire to build a railroad, and before laying a track, has, to all appearances, abandoned the whole project for years: Gilmore v. Pittsburg, Virginia and Charleston Railway Company, 31 Pittsburg Legal Journal, 334.

We think the evidence fairly shows that the plaintiff owned this lease at the time the first railway company made surveys. That his rights amounted at least to an irrevocable license for oil purposes, and gave him a right to claim and recover damages: Funk v. Haldeman, 53 Pa. St. R., 229 (244;) Huff v. McCauley, 53 Pa. St. R., 206 (208;) Rerick v. Kern, 14 S. & R., 267; Getz v. Phila. and R. R. Co., 15 W. N. C., 357.

But if we grant for the sake of the argument that plaintiff's rights only date from 1875 or 1876, he is still entitled to recover. The Caldwell Oil Company then had the right to possession of the land. Had a track been laid it could have maintained an action of ejectment, no compensation having been made or security given: Gilmore v. Pittsburg and V. & C. R. Co., 31 Pitts. Leg. J., *supra;* Levering v. Philadelphia G. and N. R. Co., 8 W. & S., 459; McClinton v. Railroad Co., 16 P. F. S., 404.

A tenant can maintain an independent proceeding to recover damages for injuries to his leasehold and property: Turnpike Road v. Bosri, 10 Harris, 29; North Penna. R. R. v. Davis, 2 Casey, 238; Dyer v. Wightman, 16 P. F. S., 427.

*Hancock* (*Glenn* with him) for defendant in error.—The location of a railroad is an appropriation of the ground and vests a right to the damages assessed in the owners thereof, which no subsequent alteration of the route can destroy: Beale v. Penna. R. R. Co., 86 Penn. St., 509.

In this case the road was located in the winter of 1870, and there is not the slightest evidence that the plaintiff had any right in the land until 1876, nearly six years after the location had been completed, and according to his own evidence with full notice of the graded route constantly before his eyes. Any damage inflicted belonged to the owner of the land at the time of the location of the road, not to a subsequent lessee: Beale v. Penna. R. R. Co., 86 Penn. St., 509; Keller's Appeal, 29 Pittsburg Leg. J., 316.

Under the Act of 1873, P. L., 253, under the same language as the Act of 1849, it was held that the damages of the lessor

and lessee must be assessed by the same jury: Fitzpatrick *v.* Penn. R. R. Co., 10 Philada. R., 107.

Mr. Justice CLARK delivered the opinion of the Court November 1st, 1886.

In the determination of this case, we must assume that the defendant's road was, by the Tutusville and Petroleum Center Railroad Company, permanently located in the year 1870, on the same ground upon which it has since been constructed; and, that the grading of this part of it was done in the year 1870 and 1871. These questions of fact were distinctly submitted to the jury, and there was abundant evidence to justify the submission. The verdict, therefore, establishes these facts beyond all controversy. It is plain too, that the entry of the company, for the location and construction of the road, was without objection on part of the Caldwell Oil Company, the owner in fee of the premises. There is no evidence whatever showing, or tending to show, any objection on part of the Caldwell Oil Company. The only controversy was with the Warren & Venango Railroad Company, who it appears claimed the same location, and, to that company the Caldwell Oil Company had released their right of way. Mr. Chapin, the superintendent, said they had got their pay and all they wanted was a railroad.

On a question of location between two rival companies, that which has first made a survey and staked out a center line is entitled to a priority of right; Wilkesbarre & Philadelphia Railroad Co. *v.* Danville & Hazleton R. R. Co., 29 Leg. Int., 373; West End Pass. R'wy. Co. *v.* Phila. City Pass. R'wy. Co., 30 Leg. Int., 257; New Brighton & New Castle R. R. Cos'. Appeal, 105 Penn. St., 13. Upon this ground, after a somewhat protracted litigation, it was determimed in 1874, that the Titusville & Petroleum Co. was entitled to the location, and the Warren & Venango Co. were finally enjoined from any further interference: Titusville & Petroleum Co. *v.* Warren & Venango Co., 4 Leg. Gaz., 117.

Pending this litigation, the work of construction ceased, and it was not afterwards resumed for several years. In the meantime the property and franchises of the Titusville & Petroleum Company were upon execution process sold, at a public judicial sale; the Titusville and Oil City Railroad Company succeeded to their rights, and the latter completed the construction and equipment of the road.

The plaintiff, Henry R. Davis, and Mr. Chapin, who was at the time superintendent of the Caldwell Oil Co., in the year 1871, commenced to operate for oil on the ground covered by this lease; by what authority from the company their opera-

tions were conducted, is not shown; it is conceded, however, that Davis has been personally engaged in the production of oil on these premises, ever since, and perhaps before, the year 1871; he says, that he has been so engaged since 1868. It is clear then, that he had actual personal knowledge of the location and grading of the defendant's road; in 1871, when he says he and Chapin became partners, the road had not only been located, but was, in fact, wholly or partially graded. The work of construction after this time was, in consequence of the litigation, and perhaps of the pecuniary embarrassment of the company, long delayed, but there was no evidence of abandonment. There was enough, at all events, to put an ordinarily prudent man upon inquiry; it cannot be said that Davis, in taking a lease in 1876, could be regarded as a purchaser without notice. Indeed, by whatever arrangement or agreement with the Caldwell Oil Company, Davis may have conducted his operations, it is not shown that he had any written evidence of title until 14th July, 1882, and at that time the railroad was wholly completed, fully equipped, and in actual operation. It is true that the lease of 14th July, 1882, was written to take effect from the year 1876, but it is plain, that under the pre-existing parol agreement, he was from 1876 to 1882 but a tenant at will, by the express terms of the statute.

The location of the road in 1870, as well as the partial construction in 1870 and 1871, and the completion of it in 1880, was without any agreement as to damages, and without any previous legal proceedings in adjustment thereof. No bond had been either tendered or filed, but as the entry of the company was without objection of the owner, no trespass was committed. Upon the subsequent filing of the bond in 1880, therefore, the title to the right of way vested, not through the proceeding initiated by the bond, but by the original occupation of the land, under the charter, for the purposes of the road. Thus in Lawrence's Appeal, 28 P. F. S., 365, a railroad company constructed their road without agreement as to damages and without any legal proceedings; but also without objection by the owner; subsequently proceedings to assess damages were commenced, but the case was compromised, and the damages released. After the construction of the road, but before the compromise, the tract was leased for mining purposes. In the decision of that case this court said:—" The railroad company had actually appropriated the land, and built and used its railway, long before any title by lease of the coal mines had vested in the defendants. This is admitted in the answer. The owner of the land made no objection to this appropriation, but after a proceeding to assess the damages had been prosecuted, finally compromised and released. The title

of the railroad company came not through this proceeding, but by its original entry and appropriation without objection. The release operated not by way of an original conveyance, but by way of a discharge for the damages incurred by the entry and construction of the railway. It is clear, therefore, that when the defendants obtained their lease, they took it subject to the previous easement, and right of way of the railroad company over the surface. The railroad was then in lawful existence and use. The owners made no defence to the right of the railroad company to appropriate the land, and these tenants cannot now set up a defence which they waived, if they had any."

In the case we are now considering the road was located and partially constructed in 1870, and that was an appropriation of the land. " Where a railroad has been located, the land has been taken and appropriated for public use; the right of the land owner, to sue for his damages, is complete, and he may recover all which may be caused by the location, and by the subsequent construction. He can have but one action; the damages cannot be severed; security for one is therefore security for all: Neal *v.* Pittsburgh & Connellsville Railroad Co., 2 Grant's Cases, 137; Wadhams *v.* Lack. & Bloomsb'g. R. R. Co., 42 Penn. St., 303. The permanent location of a railroad is an appropriation of the ground, and vests a right to the damages assessed : (Beale *v.* Penn. R. R. Co., 86 Penn. St., 509,) and the owner of land at the time of the actual location is the party entitled to the damages.

In the case now under consideration, the jury has found that the road was permanently located and indeed partly constructed, over the premises in question, in the year 1870, and this, being without objection of the owner, under all the authorities was an appropriation of the land for the purposes of the road. The Caldwell Oil Company was then the owner of this land in fee, the plaintiff had no title whatever, and we cannot see how he can have any claim for damages. A proceeding is now pending for assessment of damages of the Caldwell Oil Company, and the whole question will be there adjudicated, as of the date of the appropriation of the land.

This disposes of the 4th, 5th, 6th, 7th, 8th and 9th assignments of error, which involve the main and only important question in the cause.

The remaining assignments relate chiefly to the admission of evidence, and are wholly without merit. The cross examination of Charles Paiste, so far as it related to his former estimate of the value, was clearly competent, and that was the extent to which the examination was allowed to proceed.

The property and franchises of the Titusville & Petroleum

Centre Co. having been transferred by a judicial sale to D. P. Corwin, or to John Scott, the record of their respective deeds was certainly admissible in evidence, to establish the transmission of their title in the railroad property to the newly organized company. The franchises of the company were derived through its charter, and the record of the deeds were admissible to establish their right of way over the lands, appropriated by their predecessors in title; as a right of way, may be said to be an interest in land, the deeds are within the Recording Acts.

> We discover no error in this record, and the judgment is affirmed.