## CHARLES WARRELL v. WHEELING ETC. R. CO.

APPEALS BY CHAS. WARRELL AND S. A. OLIVER ET AL. FROM THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY.

Argued October 22, 1889—Decided January 6, 1890.

(a) In 1860, upon an amicable submission, an award was made in favor of the tenants in common of land, and against a railroad company, of compensation for land taken etc. by the company by an entry in 1855 and a construction of its roadbed in 1857.

Statement of Facts.

(b) In 1884, the compensation had neither been paid nor secured, when the landowner who then had acquired the interests of all his co-tenants, brought ejectment, resulting in 1888 in a judgment in his favor, to be released on payment into court of the amount of the award with interest.

1. In such case, the plaintiff in the ejectment was not entitled to the whole of the fund for distribution, as the sole owner of the land at the time of recovery, but the fund was distributable to the tenants in common at the time the award was made, according to their several interests.

2. The fund in court, however, was so distributable to the tenants in common, subject to the fees and expenses of audit, the compensation of the ejectment plaintiff's attorneys, and the cost of the paper-book, in defending the recovery against the railroad company in the Supreme Court.

Before STERRETT, GREEN, CLARK, McCOLLUM and MITCHELL, JJ.

Nos. 171, 224 October Term 1889, Sup. Ct.; court below, No. 233 November Term 1884, C. P.

On October 11, 1884, Charles Warrell brought ejectment against the Wheeling, Pittsburgh & Baltimore Railroad Co., to recover a strip of land containing 5.22 acres, then occupied by the line of defendant company's railroad. At the trial of the cause on March 21, 1888, the plaintiff proved title in himself to the land in dispute and rested. The defendant then put in evidence the organization of the Hempfield Railroad Company, the judicial sale of the franchises and property of said company, and the vesting of the title thereto in the defendant company. It was then shown by the defendant that the Hempfield Railroad Co. had entered upon the land in dispute in 1854 or 1855, and had constructed its roadbed through it in 1857; that on September 29, 1860, the Hempfield Railroad Co. and the then owners of the land, the plaintiff owning one ninth thereof, entered into an amicable submission to referees, by whom an award was made, dated October 24, 1860, which ascertained the compensation to which the landowners were entitled from the defendants at $800. The offer of the submission and award was objected to by the plaintiff, unless it was proposed to follow it with evidence, inter alia, that the railroad company had either paid the compensation liquidated in the award, or had secured the payment thereof according to law. The objection was overruled and the offer admitted.

The cause was then submitted to the decision of the court, without the jury, and on April 9, 1888, a decision was filed entering judgment in favor of the plaintiff for the land in dispute, to be released if the defendant company paid into court, within 60 days, the sum of $2,118, "to be distributed by the court to and among the parties entitled thereto;" otherwise, etc. To this decision and judgment a writ of error was taken by the defendant company to No. 142 October Term 1888, Sup. Ct., and on October 29, 1888, the judgment was affirmed: Wheeling, P. & B. R. Co. v. Warrell, 122 Pa. 613. On December 11, 1888, the defendant company paid into court the sum of $2,156.83, and *Mr. Freeman Brady, Jr.*, was appointed auditor to report a distribution of the same "to and among the parties entitled thereto."

On the hearing before the auditor, Charles Warrell claimed the whole of the fund in court, on the ground that, the defendant company never having paid or secured the compensation ascertained by the submission and award until after the ejectment was brought, the fund for distribution "was the price which the Wheeling, Pittsburg & Baltimore Railroad Co. paid for the privilege of remaining on his farm; that the right of way was never vested in said company until it paid the money into court, and that being the owner of the land at the time the easement vested in the company, he was entitled to the price paid for it." He contended further that the other claimants to the fund, having conveyed their entire title to him before there had been any legal appropriation of the land by the company, they had no further claim against the company except for the trespass committed by it prior to their conveyances; and, even if it were conceded that they were entitled to any portion of the award after their conveyances, they were barred by lapse of time from bringing any action against the company to recover the same at the time the action of ejectment was begun, and were not entitled, therefore, to participate in the distribution of the money recovered from the company by the owner of the legal title.

Mr. J. D. Braden and his associate counsel, for their services in the trial of the ejectment case, claimed one third of the fund for distribution, establishing a contract therefor with the plaintiff, made when the action was instituted. A bill of $21, for

the printing of the paper-book of the defendant in error in the ejectment case, was also presented.

Sarah A. Oliver and others, brothers and sisters of Charles Warrell, appeared before the auditor and claimed each a portion of the fund, on the ground that each being an owner of a one ninth interest in the land in September and October, 1860, the time of the submission and award, they were entitled each to one ninth of the fund for distribution. They also objected to the allowance of the claim for attorneys' fees and the expense of printing the paper-book for the Supreme Court, in so far as the same would affect their several claims upon the fund.

The auditor, upon the foregoing facts undisputed and positions controverted, reported:

It cannot be doubted to whom this fund belonged in 1860. Certainly the parties to that submission, of the first part, were the rightful claimants at that time of this fund. The rights of the parties were not doubted at that time, and that the parties to the submission were the rightful owners, no one called in question. They mutually entered into this contract of submission. Charles Warrell entered into the contract with the others, thereby admitting their rights. It cannot be doubted that the money in court, and now for distribution, is that award, increased by the interest thereon. The award in 1860 was in favor of all the parties to the submission, according to their respective interests therein. Has anything taken place since that time to change the rights of the parties thereto? Let us see.

Charles Warrell, since that date, has become the owner of the whole tract of land; of five ninths, as devisee under the will of James Warrell, Sr., his father; one ninth by deed of conveyance from Rebecca Miller and her husband; one ninth by deed from Mrs. Sarah Ann Oliver and her husband; and one ninth by deed from William Warrell and wife. Do these deeds change the rights of the respective parties to this fund? This is the position of Charles Warrell as heretofore stated. These deeds are silent on the question of damages, and notwithstanding this fact, Charles claims that by operation of these deeds, these parties are divested of all interest in the damages and the same are vested in him. This position is in-

genious, and the argument adduced by the counsel of Charles
Warrell is equally ingenious, but in the judgment of the au-
ditor, under the doctrine laid down in a number of Pennsyl-
vania cases, the position is untenable.

—Citing and considering McFadden v. Johnson, 72 Pa. 335;
Davis v. Railway Co., 114 Pa. 308; Losch's App., 109 Pa. 72;
Wadhams v. Railroad Co., 42 Pa. 310; Tenbrooke v. Jahke,
77 Pa. 392; Schuylkill and Susq. Nav. v. Decker, 2 W. 343;
Beale v. Penna. R. Co., 86 Pa. 509; the auditor proceeded:

Under the law as laid down in these cases, these deeds to
Charles Warrell would not operate to strip the owners of the
land, at the time of the location of the road, of their right to
the damages and to vest them in Charles. As to the claim
under the tortious entry and occupancy of the land by the
railroad company, how does this affect or strengthen the claim
of Charles? The facts of the case are, that the railroad com-
pany did not agree with the owners of the land for compensa-
tion, neither did it file a bond as required by law; neither did
it take any steps to have these damages ascertained, as pre-
scribed by the law, nor did it comply with the requirements of
the law in any particular at the time of the location of the
road; but it is equally true that there is no evidence in this
case that does show, or tend to show, that James Warrell, Sr.,
who was living on the tract of land at the time, nor Charles
Warrell, nor Mrs. Oliver, nor Mrs. Miller, who were living on
the land with their father, nor William Warrell, who was living
on another farm of James Warrell, Sr., in the neighborhood,
ever made any objection to the railroad company entering,
locating its road, and spending its money in the construction
of the same. They evidently acquiesced in what was being
done, and in the way it was being done. In 1860 the company
and the parties in interest in the land, in an amicable and
friendly way, agreed upon a method to ascertain these dam-
ages. They waived the statutory method and established a
form of their own. These things all tend to show the relation
and attitude of the parties toward each other at this time.
They are strongly persuasive that the question of trespass was
waived, and compensation for the land taken was all that was
claimed by the owners of the land, and so much was conceded
by the company. And when the award was made of damages,

it related back to the appropriation and was intended as a compensation for the land taken. . . . . [Under all the proofs, the auditor is of the opinion that the damages belong to the same parties who were entitled in 1855, when the entry was made upon the land, and the same parties who entered into the submission in 1860, and in whose favor the award was made, under that submission; that neither the deeds nor anything done since gave to Charles any right to claim them. Therefore, the conclusion of the auditor is, that the estate of James Warrell, Sr., Mrs. Miller, Mrs. Oliver and William Warrell are entitled to take out of this fund according to their respective rights in the land in 1855 and in 1860, less the costs and other expenses hereafter referred to.] [1]

—Passing upon the other controverted question in the case, the auditor, citing Dubois's App., 38 Pa. 231; McKelvy's App., 108 Pa. 615; Patten v. Wilson, 34 Pa. 299, found that Mr. Braden and his associates were entitled to one third of the fund in court, less the costs and expenses of the audit, and also to the charges for the paper-book of the defendant in error in the Supreme Court, and recommended a distribution accordingly.

The auditor's report having been filed, Charles Warrell filed exceptions thereto, alleging that the auditor erred in the conclusion of law embraced in [ ] [1], and in reporting a distribution in accordance therewith. Sarah A. Oliver et al. also filed exceptions, alleging that the auditor erred, inter alia, in allowing to the attorneys of Charles Warrell a fee to the extent of one third of the amount of the shares of the exceptants to be deducted from their shares, and in allowing the expenses of printing the paper-book.

Said exceptions of the parties having been argued, on July 8, 1889, the court McILVAINE, P. J., entered a decree dismissing all the exceptions and confirming the auditor's report absolutely. Thereupon Charles Warrell took the appeal to No. 171, and Sarah A. Oliver et al. took the appeal to No. 224, severally assigning for error the dismissal of their respective exceptions and the confirmation of the auditor's report.

*Mr. R. W. Irwin* and *Mr. J. D. Braden* (with them *Mr. E.*

*E. Crumrine* and *Mr. Boyd Crumrine*), for Charles Warrell, appellant.

Upon the question of distribution, as between the claimants, counsel cited: (1) Philad. etc. R. Co. v. Cooper, 105 Pa. 239; McClinton v. Railroad Co., 66 Pa. 404; Gilmore v. Railroad Co., 104 Pa. 275; East Penna. R. Co. v. Schollenberger, 54 Pa. 144; Davis v. Railway Co., 114 Pa. 308; 2 Wood's Railway Law, 770; Bemis v. Springfield, 122 Mass. 110; Murray v. Commissioners, 12 Met. 455: Wheeling etc. R. Co. v. Warrell, 122 Pa. 613; Lycoming Gas & Water Co. v. Moyer, 99 Pa. 615. (2) McMullen v. Wenner, 16 S. & R. 18; Fasholt v. Reed, 16 S. & R. 266; Catlin v. Robinson, 2 W. 373; Stewart v. Coder, 11 Pa. 94; Purviance v. Lemmon, 16 S. & R. 294. (3) Dimmick v. Brodhead, 75 Pa. 466; Livermore v. Jamaica, 23 Vt. 361; Cushman v. Smith, 34 Me. 277; Stacey v. Railroad Co., 27 Vt. 39; Fox v. Railroad Co., 31 Cal. 538; Hetfield v. Railroad Co., 29 N. J. L. 571; Buffalo etc. R. Co. v. Harvey, 107 Pa. 319; McClinton v. Railroad Co., 66 Pa. 404; 2 Wood's Railway Law, 790; Blodgett v. Railroad Co., 64 Barb. 580. Upon the question of the allowance of the attorney's fees, etc., counsel cited: 3 Pomeroy's Eq. J., §§ 1271, 1283; East L. Lumber and Mfg. Co. v. Marsh, 91 Pa. 96; Ruple v. Bindley, 91 Pa. 296; McKelvy's App., 108 Pa. 615; Patten v. Wilson, 34 Pa. 299.

*Mr. John L. Gow* and *Mr. T. F. Birch*, for Sarah A. Oliver et al., appellants.

Upon the question of distribution, as between the claimants, counsel cited: Davis v. Railroad Co., 114 Pa. 313; Wadhams v. Railroad Co., 42 Pa. 310; McFadden v. Johnson, 72 Pa. 335. Upon the question of the allowance of the attorneys' fees, etc., counsel cited: Freeman v. Shreve, 86 Pa. 135; Newbaker v. Alricks, 5 W. 183; Knox v. Campbell, 1 Pa. 366; Brady v. Colhoun, 1 P. & W. 140.

OPINION, MR. JUSTICE STERRETT:

These are cross-appeals from the decree distributing a fund paid into court under the following circumstances:

In 1855 the Hempfield Railroad Company located its road through a farm jointly owned by James Warrell, Sr., Rebecca

Miller, William Warrell, Sarah A. Warrell (now Oliver), and Charles Warrell; and for several years thereafter was engaged in its construction without having tendered a bond, or having instituted any proceeding for adjustment of the damages. In the meantime no resistance was offered by the landowners, but in September, 1860, they and the railroad company entered into a written agreement by which the "assessment of damages to the property of the parties of the first part, by the construction of the railroad through it," was referred to parties therein named, to "fix and determine the quantity of said lands appropriated and necessary to be appropriated by the said company, . . . . ascertain and determine all damages sustained by the parties of the first part by reason of the construction of said railroad," etc., and agreeing that the award of said referees, "or that of a majority of them, shall be final and conclusive, without exception, and upon which judgment shall be entered by the prothonotary of said court in the proceeding or suit of said parties of the first part."

The referees, having heard the parties and examined the premises, found that the quantity of land appropriated by the company, a plot of which was attached to their report, was 5.22 acres, valued at $80 per acre, and that the said landowners "have sustained damages, in the aggregate, which, including the value of said lands and the cost of building the requisite extra fencing along the side of said road, amount to the sum of eight hundred dollars;" which sum they awarded to the "owners of said land as and for all damages caused thereto by the said railroad." That award was accepted by the company and the parties in interest as a final ascertainment of the damages, etc., but no part thereof was ever paid or otherwise secured.

Afterwards, in 1866 and 1867, Charles Warrell, by devise and conveyances, acquired the respective interests of his co-tenants in the farm, but neither the will nor deeds of conveyance under which he became sole owner contained any reference to the damages aforesaid, nor did either of the parties otherwise transfer to him their respective interests in the award. In 1884, Charles Warrell, being thus invested with the legal title to the farm, brought an action of ejectment for the strip of 5.22 acres of land mentioned in the award, against the Wheeling,

Pittsburgh & Baltimore Railroad Company, which, in the mean time, had succeeded to the property, rights, and franchises of the Hempfield Railroad Company. That action was so proceeded in that a conditional judgment was entered in favor of the plaintiff, Charles Warrell, for the strip of land in controversy, to be released on payment into court by the company, within 60 days, of the amount of the award, with interest thereon, amounting in all to $2,118, to be distributed by the court to the parties entitled thereto. That judgment having been affirmed by this court: 122 Pa. 613, the money was accordingly paid into the court below, and thereupon an auditor was appointed to distribute the same. Before bringing the action of ejectment, Charles Warrell agreed with his attorney, Mr. Braden, that the latter should have, as compensation for his services, one third of whatever might be recovered.

The facts, of which the foregoing is merely an outline, are fully presented in the auditor's report, and constitute the basis of the decree appealed from. Mr. Braden having conducted the suit against the railroad company to a successful termination, appeared before the auditor, and claimed, for himself and those associated with him in the case, one third of the fund as compensation for their professional services. That, together with a small bill for printing the paper-book in the case, was resisted by all the parties in interest except Charles Warrell. Both claims were allowed, and from that branch of the decree the appeal of Sarah A. Oliver et al., No 224 October term 1889, was taken. The residue of the fund, less costs of audit, was claimed by Charles Warrell as sole owner of the legal title on which the action of ejectment was grounded; but the auditor and court below refused to sustain his contention, and distributed it among those who jointly owned the land, when the submission and award were made, according to their respective interests in the land at that time. From that part of the decree Charles Warrell appealed.

The decree thus complained of is so amply vindicated in the report of the learned auditor and opinion of the court below that, for reasons there given, we might well dismiss both appeals without further comment. There can be no question as to the character of the fund in controversy. It represents the damages sustained by the joint owners of the farm by the location

and construction of the railroad through the same. Their claim, as recognized in the submission, was for those damages, and nothing else, and the sum awarded to them by the referees, as tenants in common of the land, is specified " as and for all damages caused thereto by said railroad." Charles Warrell, as one of the tenants in common,.had, and still has, an interest in the award and proceeds thereof, corresponding with his interest in the farm at the time the damages were sustained. He never had any more. He acquired no further interest in the award either by the devise and conveyances, under which in 1866 and 1867 he became sole owner of the farm, or by any other mode of transfer. In availing himself of the legal title, as a means of enforcing payment of the award, he acted in his own right as to his joint interest therein ; but, as to the respective interests of his former co-tenants, he acted as their agent and in trust for them.

In McFadden v. Johnson, 72 Pa. 335, the owner of land through which a railroad was constructed sold the same without receiving any compensation for damages done by the construction of the road, or reserving her right thereto. Afterwards the then owner of the land effected a settlement with the company then in possession of the road for the damages done to the land before the sale, and received the money. In an action by the vendor against the person who received the damages, it was held that plaintiff was entitled to recover. Mr. Justice AGNEW, delivering the opinion of this court, said: " The damages for the injury done to the land while Mrs. McFadden was the owner, were clearly a personal claim, which did not run with the land. If the company entered unlawfully, the entry and work done upon the land were a trespass, and the right to recover damages could be enforced by a common-law action. If the entry were lawful, the company acquired a right for which the damages (so called) are a compensation, enforceable in the statutory mode given to assess it: McClinton v. Rail road Co., 66 Pa. 409    In either case, quacumque via data, therefore, the right is personal, belonging to the owner of the land when the entry and injury took place, and could pass only by her assignment."

Those who were joint owners of the farm when the railroad was located and constructed by the original company had, then,

a right to the damages which were afterwards liquidated, and finally settled by the award. If authority for a proposition so manifestly just and reasonable as that be needed, it may be found in Lawrence's App., 78 Pa. 365; Davis v. Railway Co., 114 Pa. 308, and other cases. In the case last cited, it was held that where a railroad company permanently locates its road and enters upon the land for the purpose of constructing it, without objection from the owner of the land, that is an appropriation of the land for the purposes of the road, and vests the right to damages in the landowner, though he lease it to another before a bond as security for damages is filed, and before the road is constructed. As already observed, it does not appear that anything was done by either of the appellees, subsequently to the award, that could have the effect of divesting their respective interests in the damages represented by that instrument, or of transferring the same to appellant. In this proceeding we have nothing to do with the question of appellant's authority to enforce payment of the award by an action of ejectment. That is res judicata. It was rightly and definitively settled in Wheeling etc. Railroad Co. v. Warrell, 122 Pa. 616. The assignments of error in the first appeal are not sustained.

The position assumed by appellants in the second appeal, that they are respectively entitled to their full shares of the gross fund for distribution, without contributing anything whatever to the necessary expenses of the litigation by which it was realized and brought into court, is neither just nor equitable. Invested, as he was, with the legal title to the strip of land occupied by the railroad company, Charles Warrell had an undoubted right to maintain the action of ejectment which resulted in enforcing payment of the award for damages, in which appellants and he were jointly interested. As was said by this court when that case was here, he "was the proper person to enforce the award." In fact he was made so by appellants themselves in conveying to him the legal title on which the action was grounded. That suit was vigorously contested in the court below, and then in this court. There is no question as to the necessity for the services of able and experienced counsel at every stage of the litigation. It was only when further resistance would have been disastrous to the railroad

company that it submitted to the final judgment, and paid the money into court. The fund is there for distribution on equitable principles, and there appears to be no good reason why appellants should not contribute to the necessary and reasonable expenses of litigation, including counsel fees and cost of printing the paper-book. It is not even suggested that the printing or services of counsel were unnecessary, or that the sum allowed for either is unreasonable. On the contrary, the broad ground is assumed by appellants that they are entitled to enjoy the fruits of the litigation without contributing anything whatever to the expenses thereof. This is as unreasonable as it is unjust. The expenses in question should be paid out of the fund. The court below had every opportunity of forming a correct conclusion as to the reasonableness of the claims presented by the appellees, especially the claim for professional services, and doubtless it was satisfied as to both. There appears to be nothing to have warranted a different conclusion. We are of opinion that the claims were rightly allowed. The bill for printing was no doubt correct, and, on the score of a quantum meruit, Mr. Braden and his associates were entitled to the sum that was awarded to them. We find no error in the record that would warrant a reversal of the decree.

> Decree affirmed, and both appeals dismissed, at the costs of the respective appellants.