UNITED STATES v. TOWN OF NAHANT. In re UNITED STATES.
Ex parte TOWN OF NAHANT.

(Circuit Court of Appeals, First Circuit. February 1, 1907.)

No. 674.

**1. EMINENT DOMAIN—CONDEMNATION PROCEEDINGS BY UNITED STATES—JUST COMPENSATION.**

Where the United States in its sovereign capacity exercises its arbitrary power to condemn private property for necessary public use, the just compensation which it is required by the Constitution to make to the owner should be determined on equitable principles, and should be such as to put the owner in as good condition pecuniarily as he would have been if the property had not been taken.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, §§ 325–402.

Nature and extent of power of United States to condemn property for public use, see note to Shipman v. Ohio Coal Exchange, 70 C. C. A. 653.]

**2. SAME—PROPERTY OF MUNICIPAL CORPORATION—RIGHT TO COMPENSATION.**

Where a town having statutory power to condemn land or right of way for sewer purposes actually acquired and took possession of land for such purpose, and constructed at large expense and had maintained for a number of years a sewer over the same without objection from the landowner, it has such an interest in the land and structure as entitles it to be justly compensated therefor when the same are taken by the United States for a paramount public use, without regard to the strict regularity of the proceedings by which it acquired the right. Such right of compensation also extends to structures placed by the town in public streets or roads, such as water or sewer pipes where such streets are taken, but not to the easements in the streets themselves, nor to material thinly spread upon the ground for road purposes of such character that it loses its identity and tangibility as property when so used.

**3. SAME—RULE OF COMPENSATION.**

In determining the just compensation to which a town was entitled on the taking of a part of its water and sewer systems by the United States, in proceedings to condemn land for government purposes, where the parts taken were essential to enable the systems to perform their functions, it was not error to permit the town to show the fair cost of restoring the water and sewer systems to their original efficiency of circulation, or to make such cost the measure of compensation.

**4. SAME—INTEREST.**

An award of compensation to a town under such circumstances should not include interest from the time of the institution of the proceedings where up to the time of the trial there has been no actual taking and the use by the town of its complete water and sewer systems has not been interfered with, but the award is based on the estimated cost in the future of completing the systems in view of their contemplated impairment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, §§ 397–399½.]

In Error to the District Court of the United States for the District of Massachusetts.

For former opinion, see 136 Fed. 273.

Asa P. French, U. S. Atty., and William H. Garland, Asst. U. S. Atty., for plaintiff in error.

Harrison M. Davis (James R. Dunbar, on the brief), for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. We look upon a case like this, where the government in its sovereignty exercises its right to take private or municipal property for its necessary public purposes, as somewhat exceptional in respect to rules of damage or compensation. The right to take is a strictly arbitrary right, a right without any qualification, and one which at once cuts through all individual and inferior government conditions. The federal government arbitrarily, and as a supreme entity, takes, without question, for its own necessary defenses and other public uses, whatever it lays its hand upon. While this is so, and while it necessarily must be so, the other phase of the proceeding, and this is what makes the situation exceptional, contemplates "just compensation." "Just compensation" is the compensation vouchsafed to private interests by the federal Constitution. This phase of the case is not upon arbitrary lines. The government in a situation like this in effect says the right to take is necessarily arbitrary and must stand unchallenged; but having thus, under the strong arm of sovereignty, cut through private and municipal rights, the rigor of the arm shall be relaxed, and the government itself will see that just compensation is awarded accordingly. The paramount law intends that the owner shall be put in as good condition pecuniarily by a just compensation as he would have been if the property had not been taken. Lewis on Eminent Domain, § 464. In our view it is almost, if not quite, an element of the government's case to see to it that just compensation is ascertained and accorded. The question of just compensation contemplated by the Constitution is more an equitable question than a strictly legal or technical one. The policy of the government is to absorb all interests, so that it shall remain undisturbed in the exercise of its dominion over the property, and to this end its purpose is to render constitutional compensation under legal principles, softened somewhat by broad considerations of justice.

This proceeding in its inception comprehensively directed itself against lands and rights therein and against buildings. The act conferring authority upon the Secretary of War to institute condemnation proceedings did not necessarily limit the interests to be condemned to the phraseology of that particular act, but would probably be construed as conferring authority upon the Secretary of War to institute proceedings broad enough to invoke all existing condemnation power of the government in respect to property necessary for fortifications and coast defences, but, whether this is so or not, the act of August, 1890, directs itself against "any land, or right pertaining thereto, needed for the site, location, construction, or prosecution of works for fortifications and coast defences." Following out this idea, the petition for condemnation asked for an impartial appraisement of "lands and ways and interests therein, and any building standing on said land."

It is claimed by the government that the proceedings with reference to the town's waterworks and sewage system were not shown to be legal. Now, what was the town's status in this respect?

Sections 1 and 2 of chapter 50 of the Public Statutes of Massachu-

setts (1882), in force in 1894, authorized the selectmen of a town to lay out, make, and maintain, drains and sewers through the lands of any persons or corporations, subject to the provision that, when land was taken for that purpose, the proceedings in towns should be "the same as in the laying out of townways." The proceedings with reference to townways were provided for in sections 65 and sequence of chapter 49. There was an essential difference between proceedings for laying out sewers and laying out townways in this respect: While the selectmen might lay out sewers and take lands for that purpose, the proceedings with reference to townways were under the control of the town, and were required to be finally acted on at a town meeting properly called therefor. Section 71 of chapter 49 provided that a townway could not be established until its location was reported to the town, and accepted and allowed at a public meeting of its inhabitants; and it also directed that the "laying out" should be "filed in the office of the town clerk seven days at least before such meeting." Notwithstanding the general directions that proceedings in laying out sewers were to be the same as in the laying out of townways, the direction for filing the report of the latter proceeding in the office of the town clerk seven days before the meeting of the inhabitants was not appropriate to the laying out of sewers, because the statute as to the latter did not contemplate any such meeting. The record in this case, however, does not state whether a plan was filed with the town clerk. The record likewise fails to give the details of the proceedings in reference to the sewer in question. The substance of what is shown is that in March, 1894, the selectmen, in a warrant for a town meeting, brought before the inhabitants of Nahant the question of an appropriation for building sewers, that the plan of their proposed location was presented at that meeting, that there was an appropriation of $3,000 for such purpose, and that the sewers were constructed in accordance with that plan. This in a sense implies prior action by the selectmen according to the statute. It also appears from the record that the plan was never recorded in the registry of deeds; but the law providing for such a record was not passed until March 3, 1898. Acts 1898, p. 88, c. 134. Consequently this is irrelevant.

The answer of the town with reference to the statutory proceedings in laying out the sewers is not specific. It merely states that what was done in that respect was "in the exercise of its lawful rights and duties." Of course, that general allegation would include a legal taking under sections 1 and 2 of chapter 50 of Public Statutes (1882), to which we have referred, as well as any other lawful method of proceeding which might be suggested. In view of what appears in the record, and of the acquiescence in the proceedings of the town in regard to these sewers by everybody concerned until the United States undertook to dispute them, a period of more than eight years, and in view of the lack of any specific objections to the legality of the proceedings of the selectmen, except the statement that there was no record under the act of 1898, which, as we have shown, was not required, we think we may assume that the selectmen of the town of Nahant proceeded by condemnation to secure rights for the sewers in question in accordance with the Public Statutes of 1882.

Apparently the only failure on the part of the selectmen was in not proceeding for an assessment of damages in accordance with section 3 of chapter 50; but this was not necessary as against the owners in 1894 of the lands here involved, and their successors in title. This was settled in Roberts v. Northern Pacific Railroad Company, 158 U. S. 1, 10, 11, 15 Sup. Ct. 756, 39 L. Ed. 873; and there are other decisions in that line which recognize the idea that, after an acquiescence on the part of landowners such as we have here, no proceedings can be taken by them except to obtain an assessment of damages. Indeed, the decisions seem to go further, and not to leave it open to the United States to dispute the right of the town to its sewers, even if the proceedings of the selectmen in laying them out were informal. According to Roberts v. Northern Pacific Railroad Company (at page 10 of 158 U. S., 15 Sup. Ct. 756, 39 L. Ed. 873), it was probably sufficient if the town, or its authorized officers, under a power of eminent domain, entered into actual possession of lands necessary for its corporate purposes, either with or without the consent of the owners. As the selectmen had authority under the statutes to take the lands in question for sewers, and in fact did take possession in accordance with a plan which sufficiently shows what was taken, and as the owners acquiesced in what was done, the rights of the town were complete as against the owners and their successors in title so far as involved in the proceeding before us.

Moreover, and upon a broader ground, under the conditions existing here, we do not think it necessarily follows that an interest in land must have ripened into a strictly common-law easement in order to entitle a party to just compensation. We think the Constitution contemplates just compensation for such interest as a party has and such as is taken. Of course, it must be an interest or a right recognized as of some value under legal or equitable principles.

In this case the town, in its municipal capacity, at least entered upon land under a parol license from an individual owner for which it paid $100, and upon land under a parol license from the treasurer of the land company, and constructed public sewer works at large expense, a situation in which the land company and the individual owner acquiesced for years. The town likewise in its municipal capacity constructed public waterworks in which the pipes were laid in its streets or highways.

Under such circumstances, and without regard to the question of the authority of the treasurer of the land company or to the strict regularity of the municipal proceedings in respect to its works, we think the right of the town in the nature of an easement amounted to an interest for which it is entitled to be justly compensated under the fair meaning of the Constitution. And this we think is so both as to lands condemned and as to such as were secured by purchase which the government holds subject to the interests of the municipality. See Randolph on Eminent Domain, §§ 387, 390; Roberts v. Northern Pacific Railroad, 158 U. S. 10, 11, 15 Sup. Ct. 756, 39 L. Ed. 873; Northern Pacific Railroad v. Smith, 171 U. S. 260, 270, 18 Sup. Ct. 794, 43 L. Ed. 157; Walton v. Green Bay, etc., R. Co., 70 Wis. 414, 418, 36 N. W. 10; McAulay v. Western Vt. R. R. Co., 33 Vt. 311,

78 Am. Dec. 627; Chicago & E. I. R. Co. v. Loeb, 118 Ill. 203, 215, 8 N. E. 460, 59 Am. Rep. 341; Davis v. Titusville & O. C. R. Co., 114 Pa. 308, 314, 6 Atl. 736; Brimmer v. Boston, 102 Mass. 19.

As to the road material, we think its nature is such that it cannot become the basis for recovery, either as land, structure, or personal property. This is understood to be a thin layer of macadam road material. If the material consisted of paving stones, or wood blocks of structural formation, which in the ordinary course of road repairing or road building might be taken up and placed elsewhere for beneficial purposes, it quite likely might be otherwise. But when material of the character in question is thinly spread upon the ground for highway purposes it loses its identity and tangibility as property, and in view of the purpose for which it is used would be accepted as something permanently dedicated to that particular public use. We find no authority, nor do we see any reason, for treating road material of the character in question either as a structure or as an interest in land for which recovery or compensation can be had.

Now as to the rule which the trial court adopted for the purpose of submitting the question of just compensation to the jury.

Some phases of the questions arising upon this writ of error were necessarily discussed by this court in its opinion when the case was first before us. Town of Nahant v. United States, 136 Fed. Rep. 283, 70 C. C. A. 641, 69 L. R. A. 723. The primary question, of course, is just compensation, and this means the full equivalent for the property taken. Monongahela Nav. Co. v. United States, 148 U. S. 312, 326, 13 Sup. Ct. 622, 37 L. Ed. 463. The difficulties of getting at just compensation are not so great where an entire property is taken as where a part only is taken. Where a part only is taken, resort must be had oftentimes not only to the value of what is taken, but to the situation in which the part not taken is left. Under such circumstances the books apparently recognize several expedients as reasonable, by way of evidence, for getting at what will make the owner whole. The reasonableness of the application of a particular rule of evidence quite likely depends on the particular circumstances in a given case. In the case at bar the property taken was part of a system of public municipal works which must be restored and maintained in the interests of local health and public good. The expedient adopted by the trial court was one which seems to have been recognized in United States v. Gettysburg Electric Railway Co., 160 U. S. 668, 685, 16 Sup. Ct. 427, 40 L. Ed. 576, where it is said in effect that, if the part taken is essential to enable the railroad corporation to perform its functions, or if the value of the amount remaining is. impaired, such facts might enter into the question of the amount of compensation awarded. See, also, Town of Nahant v. United States, 136 Fed. 273, 284, 70 C. C. A. 641, 69 L. R. A. 723. In this case the part of the system taken was essential to enable it to perform its functions, and the rule of evidence adopted for the purpose of ascertaining just compensation permitted the town to show the fair cost of restoring the water and sewerage system to the original efficiency of circulation. We think this was a reasonable and just expedient under the circumstances. Where part is taken just compensation includes damages to the re-

mainder (Lewis on Eminent Domain, § 464, and authorities, note 86), and the evidence under the rule adopted was one way of showing the damages which the town sustained by reason of what was taken.

Now as to interest. Without regard to the question whether the time of taking relates to the date of the inception of the condemnation proceeding, or to the date of the decree, the time is often fixed by a rule of fiction having reference to a constructive rather than to an actual taking, and we do not think the question of interest is necessarily controlled by a fictional rule. In this case it is admitted that at the time of the trial there had been no actual interruption of the town's possession, and that the town had continued in its enjoyment of the right as fully as it would have done if the government proceedings had not been instituted. The just compensation has not therefore been withheld, and its ascertainment in fact in this particular case is made to turn on what it would cost to construct other works, and it is not suggested that any expenditure in fact has been made in that direction.

The equitable rule sustained by authorities (Lewis on Eminent Domain, § 499, note 44), which under certain circumstances permits an adjustment between the value of the use of the property and interest, is said to be one derived from the constitutional provision requiring just compensation. Looking at the enjoyment of use here as based upon fact rather than fiction, if the town were allowed interest from the date of the filing of the petition, it would be allowed more than just compensation, because it would have enjoyed both the benefit of possession and of interest. As the rule of evidence adopted for ascertaining just compensation permitted the town to show the estimated cost of necessary future expenditures, it would be giving the town more than just compensation to add interest to the estimated future expenditures.

In this case there were special verdicts based upon the different claims of the town, all of which included interest, and the amount of interest appears upon the face of each special verdict. There was also a general verdict which included all the special verdicts.

This case is remanded to the District Court, with directions to open the decree entered on July 27, 1906, so far as it relates to compensation to the town of Nahant, and to enter a decree for the amounts awarded by the jury on account of the water supply system $3,850, and on account of the sewer system $9,300, making a total of $13,150, without interest, and for the costs in the District Court, and for nothing more.