### UNITED STATES v. CERTAIN LAND IN TOWN OF NEW CASTLE, ROCKINGHAM COUNTY.

(Circuit Court, D. New Hampshire.  November 21, 1908.)

No. 552.

1. COURTS (§ 414*)—UNITED STATES COURTS—CIRCUIT COURTS—JURISDICTION—CONDEMNATION PROCEEDINGS—"COURT HAVING JURISDICTION."

Act Aug. 1, 1888, c. 728, 25 Stat. 357 (U. S. Comp. St. 1901, p. 2516), provides that in every case in which the Secretary of the Treasury or any other officer of the government has been or shall be authorized to procure real estate for the erection of a public building or other public uses he shall be authorized to acquire the same by condemnation by proceedings in the federal Circuit or District Court in the district in which the practice, pleadings, forms, and modes of proceedings shall conform, "as near as may be," to those existing at the time in like causes in the courts of the state.  Act Aug. 18, 1890, c. 797, 26 Stat. 315, 316 (U. S. Comp. St. 1901, p. 2518), provides that "hereafter the Secretary of War may cause proceedings to be instituted in the name of the United States in any court having jurisdiction of such proceedings for the acquirement by condemnation of any land or right pertaining thereto needed for the site * * *. for fortifications and coast defences, such proceedings to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the states wherein the proceedings may be instituted."  *Held,*

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that by virtue of the earlier statute a Circuit Court of the United States is a "court having jurisdiction" of proceedings under the later act; that the provision of the latter that the proceedings shall be prosecuted in accordance with the laws of the state cannot be construed literally so as to oust the federal court of jurisdiction, where the state statute designates a special tribunal for such proceedings, but only requires a general conformity to the state practice as a whole.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1108; Dec. Dig. § 414.*]

2. JURISDICTION.

All other questions as to jurisdiction and form of proceedings disposed of by following United States v. Gettysburg Electric R. Co., 160 U. S. 668, 16 Sup. Ct. 427, 40 L. Ed. 576, Chappell v. United States, 160 U. S. 499, 16 Sup. Ct. 397, 40 L. Ed. 510, and Hingham v. United States (C. C. A.) 161 Fed. 295.

3. EMINENT DOMAIN (§ 47*)—PROCEEDINGS BY UNITED STATES—PROPERTY PREVIOUSLY DEVOTED TO PUBLIC USE.

Query, whether property already lawfully taken and held for the uses of the state as a public way can be taken for the uses of the United States without express authority from Congress therefor, or under a statute authorizing in general terms the condemnation of land for such use.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 107; Dec. Dig. § 47.*

Nature and extent of power of United States to condemn property for public use, see note to Town of Nahant v. United States, 70 C. C. A. 653.]

Proceedings by the United States to condemn property for fortification purposes. On plea and motion to dismiss.

C. W. Hoitt, U. S. Atty.

J. W. Kelley and W. D. Turner, for Town of New Castle.

Frink, Marvin & Batchelder, for Mary B. Wendell and others.

PUTNAM, Circuit Judge. This is a petition by the United States for the condemnation of lands in the town of New Castle, alleged to be "needed for the site, location and construction of an artillery post for the use of the war establishment of the United States." The petition is signed in behalf of the United States by the Attorney General, and contains a proper representation that what is sought to be condemned is, in the judgment and opinion of the Secretary of War, needed for the purposes we have stated, and that in his opinion it is necessary and advantageous for the United States to acquire the same therefor. It also contains the following:

"(3) That the Secretary of War representing the United States and acting in pursuance of the authority vested in him by the aforesaid act of Congress, has been unable to agree with the persons owning or having an interest in said lands for the purchase of the same at a fair and reasonable valuation for the uses and purposes aforesaid.

"(4) That in pursuance of the authority vested in him by the aforesaid act the Secretary of War, on the second day of January A. D. 1908, made application to the Attorney General of the United States to cause proceedings to be commenced for the condemnation of said lands hereinafter described, for the uses and purposes aforesaid."

The petition clearly identifies the boundaries of the land, although with it there is a map, which is not referred to in the petition so far as we can discover, and which therefore we are compelled to reject.

However, so far as the mere formalities required by the statutes are concerned, the petition is correct; but in its original form it referred only to the statute of April 21, 1904, which we will explain hereafter, and which statute alone clearly would not support the proceeding. Subsequently, the petition was amended by inserting references to various other statutes, which we will explain. This amendment was under the ordinary rules of law allowable, as especially held in United States v. Gettysburg Railway Company, 160 U. S. 668, 16 Sup. Ct. 427, 40 L. Ed. 576. Therefore it was allowed.

The statutes now relied on are as follows:

We have already referred to the act of April 21, 1904, c. 1407, found in 33 Stat. 234, described in the petition as the act of April 27, 1904. The portion relied on is simply the general appropriation of $100,000 for the procurement of land "or right pertaining thereto" for works for fortifications and coast defenses. This clearly contains no authority to proceed to take the property in question here by the right of eminent domain.

The next act referred to is that of April 24, 1888, c. 194, 25 Stat. 94 (U. S. Comp. St. 1901, p. 3525), which we need not recite because it is superseded by the act of August 1, 1888, c. 728, 25 Stat. 357 (U. S. Comp. St. 1901, p. 2516), which reads as follows:

"In every case in which the Secretary of the Treasury or any other officer of the government has been, or hereafter shall be, authorized to procure real estate for the erection of a public building, or for other public uses he shall be, and hereby is, authorized to acquire the same for the United States by condemnation, under judicial process, whenever, in his opinion it is necessary or advantageous to the government to do so, and the United States Circuit or District Courts of the district wherein such real estate is located, shall have jurisdiction of proceedings for such condemnation, and it shall be the duty of the Attorney General of the United States upon application of the Secretary of the Treasury, under this act, or such other officer, to cause proceedings for such condemnation, within thirty days from the receipt of the application at the Department of Justice.

"Sec. 2. The practice, pleadings, forms, and modes of proceedings in causes arising under the provisions of this act shall conform, as near as may be, to the practice, pleadings, forms, and proceedings existing at the time in like causes in the courts of record of the state within which such Circuit or District Courts are held, any rule of the court to the contrary notwithstanding."

This act vests no authority in any executive officer to procure real estate by condemnation, but vests jurisdiction in the federal courts, and establishes methods of procedure, whenever authority has been or might thereafter be given, referring those courts to some other law for such authorization. That authorization, so far as the present case is concerned, is found only in the act of August 18, 1890, c. 797, § 1, 26 Stat. 315, 316 (U. S. Comp. St. 1901, p. 2518). The paragraph commences with an appropriation of $500,000, or so much thereof as may be necessary "for the procurement of land, or right pertaining thereto, needed for the site, location, construction, or prosecution of works for fortifications and coast defences," and then proceeds as follows:

"Hereafter the Secretary of War may cause proceedings to be instituted, in the name of the United States, in any court having jurisdiction of such

proceedings, for the acquirement, by condemnation, of any land, or right pertaining thereto, needed for the site, location, construction, or prosecution of works for fortifications and coast defences, such proceedings to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the states wherein the proceedings may be instituted."

Then there is an authorization to the Secretary to purchase "land, or rights pertaining thereto," at a reasonable price, or to accept donations thereof. Then there is a provision that nothing therein should be construed to authorize an expenditure or involve the government in contracts for the future payment of money in excess of the sums appropriated.

There was an order of notice permitting all parties interested to answer. Thereupon, Mary B. Wendell and others, who are concededly interested in the lands sought to be taken, and the town of New Castle by its selectmen, came in as respondents. Each of them filed pleadings, somewhat different in their form and entitled somewhat differently, but both amounting in a proceeding of this kind to a general demurrer, except that the town of New Castle also alleges an interest on the ground that a taking as asked for by the United States would include the extinguishment of certain public ways for the care of which the town is responsible under the statutes of New Hampshire, and in which the inhabitants of that town have, of course, a peculiar interest. Aside from the questions which arise from this claim made by the town of New Castle as to the public ways, and aside from a single question to which we will refer separately, every proposition made by the respondents has been disposed of in Chappell v. United States, 160 U. S. 499, 16 Sup. Ct. 397, 40 L. Ed. 510, and United States v. Gettysburg Railway Company, 160 U. S. 668, 16 Sup. Ct. 427, 40 L. Ed. 576. It would be a vain thing for us to discuss these topics. We note especially, however, that United States v. Gettsburg Railway Company disposes of all questions arising out of the claim that there was no sufficient appropriation by Congress with reference to the subject-matter involved in these proceedings. Indeed, inasmuch as it is apparently now settled that the condemnation is not complete until payment is made, the appropriation may as well follow the decree of condemnation as precede it. Hingham v. United States (C. C. A.) 161 Fed. 295, decided by the Circuit Court of Appeals for this circuit on April 9, 1908.

The single question to which we refer arises out of the peculiar phraseology of the act of August 18, 1890. This act seems to be the only statute which gives color of authority in the Secretary of War for these particular proceedings. It is broad in its terms, but, under the decisions of the Supreme Court to which we refer, is undoubtedly sufficient for the present purpose so far as mere authority is concerned. It contains the following peculiar expressions: "In any court having jurisdiction of such proceedings;" also, "in accordance with the laws relating to suits for the condemnation of property of the states wherein the proceedings may be instituted." These expressions compel us first to find any law giving the Circuit Court jurisdiction of proceedings of this character. That is found in the act of August 1, 1888, which we have already quoted, so that the difficulty is out of the way.

Thus this act of 1890, and that of August 1, 1888, furnished the authority, and also the tribunal.

This leaves only the peculiar expression at the close of the act of 1890 which we have cited. This is different in form from what is found in the previous statutes. For example, the act of August 1, 1888, which superseded the act of April 24, 1888, provided in the second section that the practice, and so forth, should conform "as near as may be" to the practice, and so forth, of the courts of record of the state within which the proceedings necessarily take place. The act of 1890, which furnishes the only authority to the Secretary of War in this particular case, departs from the words "as near as may be," and uses the words "in accordance with the laws" of the state wherein the proceedings must be instituted. Mary B. Wendell, and those associated with her, rely on this expression in connection with Pub. St. N. H. 1901, c. 1, § 3, which expressly provides that, when the United States cannot obtain by purchase land required by it for public uses, it shall commence proceedings by petition to the selectmen of the town where the land is situated for an assessment of the damages, with an appeal, according to section 4, from the selectmen to the Supreme Court of the state of New Hampshire. If the letter of the statute is to be obeyed, and if in accordance with the letter the proceeding must be in the form especially pointed out by the Public Statutes of New Hampshire, then the Congress of the United States has consented that the jurisdiction of the courts of the United States shall be ousted, and has consented to proceed solely before local tribunals, the first one of which is constituted of the same party or parties adversely interested in the proceedings. It is not a reasonable construction of the statutes of the United States to give to them effect of this character. Nevertheless, none of the cases decided by the Supreme Court concern a condemnation of land relying for its support on the act of August 18, 1890; and there are no decisions of any satisfactory authority construing that act, if there are any at all. This seems, therefore, to be for us a new case, but we deem the proposition easily disposed of. It is well settled that where, under previous statutes, a proceeding of this character must be in accordance with the laws of any particular state, this does not mean that the proceeding must be in accordance with a law of the character relied on by Mary B. Wendell, and those associated with her, which contemplates a peculiar proceeding for a peculiar purpose. It means at the most that the statutes as a whole are to be looked through, and that, where those statutes are not harmonious with reference to details, the proceedings in the federal courts are to be in accordance with the underlying spirit of the whole of them. For example, in this particular proceeding are we to be governed by the peculiar statute relied on by Mary B. Wendell, and those associated with her, or are we to take the statutes in relation to sewers (Pub. St. 1901, c. 50, § 8), which provide for a proceeding commencing with the mayor and aldermen, or chapter 142, § 13, with reference to land taken for flowage rights, where the proceedings commence with a petition to the Supreme Court, or chapter 158, § 7, with reference to land taken for railroads, where the pro-

ceedings commence before the railroad commissioners? We are fully satisfied that the requirement that the proceedings shall be in accordance with the laws of New Hampshire is accomplished if the proceedings are held in the federal court, where the records show clearly what has occurred to protect the rights of all parties, and where the damages are assessed by a competent and indifferent body of men, acting under the supervision of the court, whether they be commissioners or a jury.

We now look at the interposition of the town of New Castle by its selectmen. As this intervention is only for the purpose of seeking a dismissal of the proceedings, and as we cannot dismiss them on the record here, we are not called on to inquire whether the selectmen are authorized to contest this proceeding without a special vote of the town. We shall postpone further proceedings to enable the town to pass such a vote, if it is advised so to do. So far as we can discover, the only ground of interference by the town would be to protect the public ways running through this tract, if there are any. The plan of which we have spoken shows an indication that there are such; but, as we have said, the plan is no part of the record, and the record nowhere indicates anything of this nature. Consequently, on this record the town has no standing; nevertheless, we deem it advisable to make two observations: First, in accordance with the decisions of the Circuit Court of Appeals for this circuit in Nahant v. United States, 136 Fed. 273, 70 C. C. A. 641, 69 L. R. A. 723, decided March 20, 1905, in United States v. Nahant, 153 Fed. 520, 82 C. C. A. 470, decided February 1, 1907, and in Hingham v. United States (C. C. A.) 161 Fed. 295, decided April 9, 1908, the condition may be essentially different from what it would be if the proceedings were directly authorized by the state of New Hampshire in behalf of itself or of some quasi corporation established by it. Whatever may be the sovereign rights of the state of New Hampshire in the public ways in the town of New Castle, the United States have none, but they come in as a stranger, and must accept the position of one setting up an absolutely adverse interest, resistance against which must be made by the town of New Castle so long as the state of New Hampshire makes no superior claim in reference thereto. On settled rules, a mere possessory right, or a mere color of title, is sufficient to maintain a proceeding so long as the owner of the fee or otherwise of the body of the property does not interpose.

There is also a serious question whether property already lawfully taken and held for the uses of the state as a public way can be taken for the uses of the United States without express authority therefor. Of course, defense against a public enemy is of a higher character than the matter of going and coming on foot or with teams, so that it cannot be denied that the United States would have a right to take public ways for the purposes of fortification. The difficulty arises out of the question whether such a right can be inferred from mere general phraseology like that of the act of August 18, 1890. It would be unreasonable to assume that Congress intended that federal officials should assert jurisdiction to interfere with the public purposes of sov-

ereign states without express authority therefor. The presumption is that authorized public uses are not to be interfered with under mere general terms of federal or state legislation. The trend of the authorities would seem to show that, with reference to the present case, something more than the general phraseology of the act of August 18, 1890, is required before public ways can be closed by the Secretary of the Treasury or under his direction. As we cannot on this record determine the questions which the town of New Castle has brought to our attention by its briefs, we will only refer on this topic to Lewis' Eminent Domain (2d Ed.) §§ 272 and 272a, and the notes referred to therein, and to the reasoning and authorities appearing in Old Colony Railroad Company v. Framingham Water Company, 153 Mass. 561, 563, 27 N. E. 662, 13 L. R. A. 332, and in Easthampton v. County Commissioners of Hampshire, 154 Mass. 424, 425, 28 N. E. 298, 13 L. R. A. 157, and sequence. Of course, all these suggestions about the town of New Castle are made without prejudice until the record is complete.

The so-called "plea" of Mary B. Wendell, and those associated with her, filed on May 5, 1908, and the so-called "motion to dismiss" of the town of New Castle, filed on May 5, 1908, as amended on May 29, 1908, are overruled, and the respondents will answer to the merits on or before the 1st day of January, 1909.