## THE CITY OF WATERBURY vs. THE PLATT BROTHERS AND COMPANY.

Third Judicial District, Bridgeport, October Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Pursuant to an Act relating to the disposal of its sewage (Special Acts of 1903, page 179), the plaintiff applied to a judge of the Superior Court for the appointment of a committee to estimate the amount of compensation which should be paid to the defendant for any damage, loss or injury which it had already suffered by reason of the acts of the plaintiff in disposing of its sewage in the Naugatuck River—which damages were alleged to be substantial in amount—and to fix all future damages at a sum to be paid annually so long as the plaintiff might continue to cause such damage. *Held :* —

1. That while the Act assumed the existence of a power in the city, under its charter, to condemn the property of lower riparian owners for the public use of city sewage, and extended that power to owners of property on the Naugatuck River, its provisions were confined to prescribing a mode for the condemnation of such property in lieu of the mode theretofore existing.

2. That the clause of the Act authorizing the compensation to be fixed at a sum to be paid annually during a stated number of years, or during the continuance of the city's use, could be upheld only by construing it as applicable to cases in which the parties in interest agreed to that method of payment; and therefore such construction, which was reasonable and consistent with the validity of the Act, must be adopted.

3. That the provision in respect to the assessment of past damages by a committee, must also be treated as permissive rather than compulsory ; for otherwise it would deprive the landowner of his right to a trial by jury, and be unconstitutional for that reason.

It is not to be assumed that a city, having condemned the property of

riparian owners for city sewage, will so improperly or negligently use it as to create a public nuisance.

The right of a landowner adjoining a stream, to have the water flow over his land in its accustomed manner, is not a mere easement or appurtenance, but a right inseparably annexed to the soil; and a taking of that right is to that extent a taking of his property in the land.

The question whether a necessity exists for taking private property for a particular public use is one for the legislature, whose decision is ordinarily final; but what constitutes the "just compensation" essential to be made in order to complete the taking, is a judicial question, which the legislature cannot determine.

"Just compensation" means a fair equivalent in money, which must be paid at least within a reasonable time after the taking; and it is not within the power of the legislature to substitute for such present payment future obligations, bonds, or other valuable security.

The right of trial by jury cannot be destroyed or violated by the legislature under the guise of providing a new or modified remedy for the enforcement of a legal right.

Argued November 5th, 1903—decided January 26th, 1904.

APPLICATION for the appointment of a committee to determine what compensation should be paid to the defendant for loss or damage already sustained, and which might be sustained thereafter, by the riparian establishment of the defendant, by reason of the discharge of the plaintiff's sewage into the Naugatuck River, brought to and tried by the *Hon. Ralph Wheeler*, a judge of the Superior Court, upon demurrer to the application. The judge sustained the demurrer and dismissed the application, and the plaintiff appealed. *No error.*

*Lucien F. Burpee*, for the appellant (plaintiff).

*John W. Bristol*, for the appellee (defendant).

HAMERSLEY, J. In 1884 the city of Waterbury, with permission of the legislature, constructed a system of sewers whereby the *excreta* and noxious refuse accumulated by its inhabitants were collected and, together with the surface drainage, discharged into the Naugatuck River.

Waterbury *v.* Platt Bros. & Co.

In 1891 Platt Brothers and Company, owner of land and a manufacturing plant on the river below the city of Waterbury, brought an action against the city to the Superior Court, claiming an injunction against such use of the river and damages for the special injuries resulting therefrom. The court rendered judgment, awarding damages to the plaintiff and granting an injunction. The judgment was affirmed by this court in 1900. *Platt Bros. & Co.* v. *Waterbury*, 72 Conn. 531.

We then decided that such use of the river was an unlawful invasion of the property rights of Platt Brothers and Company, which the legislature had not authorized, and could not authorize except by providing for proceedings to appropriate the property for the public use of sewering the city of Waterbury, upon payment of just compensation for the property thus taken. The principle announced had been settled in other cases, and is not open to question. *Nolan* v. *New Britain*, 69 Conn. 668; *Morgan* v. *Danbury*, 67 id. 484. We expressed the opinion that the charter of the city of Waterbury authorized the city to institute proceedings for condemning the property of Platt Brothers and Company for the public use specified, stating, however, that a decision on that point was not material to the disposition of the case. Subsequently the city brought an application to a judge of the Superior Court asking the condemnation of the Platt Brothers and Company property for a period of five years. The application admitted that the use of the Naugatuck River for conveying the accumulated filth of the city to the premises of Platt Brothers and Company was not necessary to the public use of sewering the city, and alleged that the city intended to and would provide a different method for disposing of said sewage within a period of five years; that it would be compelled to use the river for that purpose during such period; and therefore asked that the property of Platt Brothers and Company be taken for this temporary use, and compensation be awarded for such temporary taking. The application was dismissed because the city's charter did not authorize it to condemn property for such a temporary use,

and the judgment of dismissal was affirmed by this court. *Waterbury* v. *Platt Bros. & Co.*, 75 Conn. 387. In this particular the statute remains unchanged.

The charter of the city of Waterbury (6 Special Laws, p. 802; 9 id. p. 233) authorized the municipality to provide for the construction of drains and sewers, and for compelling its inhabitants to use such sewers for the prevention of accumulations of filth dangerous to public health, including the authority belonging to a riparian landowner to drain into the Naugatuck River in such manner as would not injure the property of other owners in the water of the river.

The right of a landowner to have the water of a stream covering his land flow in its accustomed manner, exists in connection with the rights of other landowners over whose land the stream flows, but it is not an easement or appurtenance; it is inseparably annexed to the soil. A taking of that right is to that extent a taking of his property in the land. *Nolan* v. *New Britain*, 69 Conn. 668, 681; *Wadsworth* v. *Tillotson*, 15 id. 366, 373. When such property is taken for the public use of sewerage, the public acquires the right to use the water of the stream for the conveyance of its sewage, subject to the rules governing the use of property held for a public use. The property thus taken is carved out of the owner's estate, and is in the nature of an easement imposed upon his land through this compulsory sale of his property. Like other property taken for public use, it may revert to the owner upon the abandonment of that use.

In 1881 amendments to the city charter authorized the city of Waterbury to construct a particular system of sewers in a particular way; to establish a fund to defray the expense of that construction and of the extension of main sewers beyond the city limits; to take property for the purposes of the Act; and provided a mode for condemning the property needed for said purposes. 9 Special Laws, pp. 233–237.

In 1903 another amendment of the charter was passed. Special Laws of 1903, pp. 179, 180. This Act plainly assumes a power in the city, conferred by its existing charter,

to take the property of the lower riparian owners for the public use of sewering the city, by imposing upon their land the burden or easement involved in the public right to use the water of the river for conveyance of sewage from the city, and so removes, for the future, any doubt as to the meaning of the charter that might have been entertained before the passage of this amendment. Beyond affirming that the existing power to take property for the purpose of sewering the city shall include the property of lower riparian landowners on the Naugatuck River—and possibly other landowners—the Act is confined to providing a mode for condemning such property, in lieu of the previously existing mode.

The present application, for the condemnation of Platt Brothers and Company's property, is brought in pursuance of this last amendment. The allegations of the amended application, stripped of some surplusage and briefly stated according to legal effect, are these : (1) Platt Brothers and Company own a tract of land on the Naugatuck River about two miles below the city of Waterbury, with a water privilege whereon is a manufacturing plant. (2) Since 1884 the city of Waterbury has at various times, by means of the water of the Naugatuck River, conveyed to and upon the said premises filthy and noxious substances, discharged into the river from its sewers, whereby said Platt Brothers and Company have been greatly damaged. (3) The city of Waterbury has found it necessary and desirable to discharge into the Naugatuck River the sewage accumulated by its inhabitants and collected by the sewers it has constructed or may construct in pursuance of legislative permission, and to use the waters of said river for the conveyance of said sewage to and past the above described land, and for that purpose it is found necessary and desirable to take the property of said Platt Brothers and Company as above described. (4) Said city and said Platt Brothers and Company have disagreed as to the amount of compensation to be paid for the taking of said property, and as to the amount of damages that should be paid for the wrong described in paragraph 2. The prayer

for relief asks the appointment of a committee to examine
the premises and to determine the amount the city shall pay
Platt Brothers and Company in settlement of the damages
they have suffered by reason of the wrongs described in
paragraph 2; and to ascertain and determine the just com-
pensation for the property to be taken as aforesaid, and to
determine that just compensation by fixing the amount of an
annual payment which shall be paid by the city to Platt
Brothers and Company so long as the city continues to use
the property for the public purpose for which it is taken.

The respondents demurred to the application and prayer
for relief, and the trial judge sustained the demurrer; and no
further pleadings being filed, rendered judgment dismissing
the application.    The rulings of the judge upon the demur-
rer are the only reasons of appeal assigned.

Perhaps the principal ground of demurrer is that which
affirms the insufficiency of the application and prayer for
relief, in that it asks the compensation to be awarded for tak-
ing the respondent's property to be fixed at a sum to be paid
annually so long as the property taken shall be used for the
public use specified.    The applicant claims that this mode
of making compensation is authorized by the Act of 1903.
If so, the Act to that extent must be held invalid.

The necessity of taking property for a particular public
use is a legislative question, and ordinarily the decision of
the legislature upon that question is final.    What is the just
compensation necessary to be made in order to complete the
taking of property, is a judicial question, which the legisla-
ture cannot determine. *New York, N. H. & H. R. Co.* v.
*Long*, 69 Conn. 424, 437.    So when the legislative Act di-
rects the assessing tribunal to ascertain the "value of the
land," or uses any phrase that might imply a restriction of
the judicial powers, it must be held as equivalent to a direc-
tion to judicially ascertain the just compensation for the prop-
erty taken, or else the Act will be void.    *Bigelow* v. *West
Wisconsin Ry. Co.*, 27 Wis. 478, 486.

"Just compensation" means a fair equivalent in money,
which must be paid at least within a reasonable time after the

taking, and it is not within the power of the legislature to substitute for such present payment future obligations, bonds, or other valuable security.  *Butler* v. *Sewer Commissioners*, 39 N. J. L. 665; *Bloodgood* v. *Mohawk & H. R. Co.*, 18 Wend. 9, 35; *Sanborn* v. *Belden*, 51 Cal. 266; *Burlington & C. R. Co.* v. *Schweikart*, 10 Col. 178.

The Act of 1903, in authorizing a finding of the amount of compensation for the damage which any person shall suffer by reason of the future acts of the city in disposing of its sewage, authorized the finding of the amount of just compensation for the property taken for the public use of sewering the city, and does not control the duty of the court nor limit its power in settling what is just compensation.  In authorizing the compensation for all future damages to any person, to be fixed at a gross sum to be paid at a time named, the Act authorizes the amount of just compensation, as judicially determined, to be paid on a day certain within a reasonable time.  In authorizing the alternative course —of fixing the compensation at a sum to be paid annually during a stated number of years, or during the continuance of the use—the Act exceeds the legislative power, unless the alternative course is authorized only in pursuance of an agreement between the parties.

Reading the Act in connection with the existing charter, we think this construction of the Act is a reasonable one, and that if a different construction could be regarded as reasonable it would involve the invalidity of the Act; and therefore the reasonable construction consistent with the validity of the Act must be adopted.

Another ground of demurrer questions the right of the applicant to ask the appointment of a committee to assess damages for the wrongs mentioned in paragraph 2 of the application.  In charters authorizing municipal or private corporations to condemn property for the public use of providing a supply of pure water, language of doubtful import has not infrequently been used.  In these cases the property to be taken is mainly the water of a natural stream, which belongs to owners of land through which the stream flows.

The corporation having acquired some land on the stream, has a right to take so much of the water as belongs to the owner of that land. If it takes more, it invades the rights of other landowners on the stream, and every day's continuance of such wrongful diversion of water renders it liable for a suit for injury so caused. *New Milford Water Co.* v. *Watson*, 75 Conn. 237, 250. Proof of the legal injury implies some damage. *Watson* v. *New Milford Water Co.*, 71 Conn. 442, 450. This invasion of legal rights may often be continued for a long time without causing any substantial and specific damage, and so.it may not infrequently happen that a water company, authorized to condemn water rights, will continue for a longer or shorter time an unlawful, though not substantially injurious, diversion of water before commencing proceedings for condemnation. There may be cases where the postponement of condemnation proceedings would seem to be in the interest of all concerned. It is doubtless in view of this condition that the legislature, in authorizing the acquirement of such rights, has, in various charters, provided that either party may apply for the appointment of a committee to estimate the damage, past and future, caused by a specified diversion of water. So far as such legislation is permissive, it would seem convenient and unobjectionable; but if it must be treated as compulsory, depriving a party of all remedy for substantial past injuries, except through a proceeding for condemnation, its validity has been doubted. *New Milford Water Co.* v. *Watson*, 75 Conn. 237, 249 ; *Norwalk* v. *Blanchard*, 56 id. 461, 463.

The question now before us may differ in certain ways from any likely to arise in the application of charter provisions like those mentioned. The applicant alleges that it has committed clearly tortious acts in respect to the property of the respondent, from which the respondent has suffered substantial, actual damage, and asks the appointment of a committee to assess the amount of. that damage and direct its payment in full discharge of the existing liability to the respondent; claiming that the Act of 1903 authorizes such a proceeding. There may be several aspects to a legisla-

tive Act of this kind. It is sufficient for present purposes to consider one. The respondent has a valid cause of action against the applicant; the only process known to the law for trying that cause of action and settling the amount due to the respondent is a civil action in which the facts in issue must be tried by a jury unless the right to a jury trial is waived. The Act, if compulsory, deprived the respondent of a trial by jury. Does it deprive him of the right of trial by jury within the meaning of the constitutional guaranty, "the right of trial by jury shall remain inviolate?" Const. of Conn. Art. I, § 21. It is true that the legislative power of creating and modifying remedies for the enforcement of rights is a most necessary and exceedingly broad power, and that its legitimate use may in some instances incidentally limit the field of jury trial. But it is not true that under the guise of providing a new or modified remedy, the right of trial by jury can be destroyed or violated. Should a law be enacted that all actions to recover damages for trespass to land must be brought to a court of equity, the Act would be void unless it could be held to impliedly direct the court to refer issues of fact to a common law jury for trial. It is difficult to see how the Act in question differs in substance from such a law, beyond the limitation of its operation to a small selected class. It may be suggested that there is a difference in principle, in that the trial of facts by a committee of the court is limited to cases where the tortious act is admitted, and the only questions of fact to be tried relate to the amount of damages. It is true that in this State the assessment of unliquidated damages upon default or demurrer overruled in an action at law, is made by the court; and we have held that the right of trial by jury, as it existed at the adoption of our Constitution, did not include the right to have the facts involved in such an assessment of damages determined by a jury. But we have not held, and it is not true, that this practice of the assessment of damages by the court upon default of the defendant in an action at law extended beyond the single instance mentioned, and we do not think that the existence of this practice can justify

the conclusion that the trial of questions of fact affecting the amount of damages was not within the field of jury trial, which is secured to every citizen by the Constitution. Unless this is so, it would be difficult to see why the legislature might not provide that in every action at law for the recovery of unliquidated damages, the jury should decide only those facts that determined the defendant's liability, and that the court should decide the facts that determine the amount of damages. Such legislation would certainly radically alter our system of jury trial, and inevitably do violence to the right of trial by jury. A right determination of the extent of an injury is no less important to its victim than a right determination of the existence of an injury. The guaranty of a jury trial extends to both, and the practical limitation of the guaranty involved in our ancient practice of assessing damages by the court, when a defendant submits to a default, furnishes no ground for new and different limitations, even if they are in some respects analogous.

If the authority given by the Act of 1903 for the determination of the amount due for such injuries as are described in paragraph 2 of the application, by a committee of the court appointed to fix the compensation for the property taken, is permissive, the provision is unobjectionable and may serve the interest and convenience of the parties; otherwise it is invalid. We think it may properly be treated as permissive; but in either case the applicant is not entitled to have the committee assess the amount of its liability to the respondent for its past wrongs, against the objection of the respondent, whether taken by demurrer or otherwise.

If the application and prayer for relief shall be amended, as it may be, so as to remove the defects which we have already indicated, it will not be open to the objections raised in the remaining ground of demurrer.

The legislature has the power to authorize, and has authorized, the city to acquire for the public use of sewering, by agreement with landowners on the Naugatuck River, or by condemnation of their property, the right to utilize the

flowing water of said river for that purpose. It cannot be assumed that, having acquired such property, the city will so improperly or negligently use the property it has acquired as to inflict on the property of others any injury that is not incident to the lawful employment of its own property for such public use. If a condition should ever arise where it seems impossible for the State to afford that protection which it owes to the health and lives of the inhabitants of a city, without using means that must subject other portions of the public to the very dangers from which the inhabitants of the city are thus relieved, a serious problem will be presented for legislative solution, involving questions of legislative power which the courts may eventually be obliged to determine. There is at this time no occasion to consider such questions.

There is no error in the judgment appealed from.

In this opinion TORRANCE, C. J., HALL and PRENTICE, Js., concurred.

BALDWIN, J. (concurring in the judgment, but dissenting from part of the opinion). The legislative power of this State is vested in the General Assembly subject to fewer restrictions than those prescribed by the constitutions of most of her sister States. The Act of 1903, passed for the relief of the city of Waterbury, provides that if it cannot agree with the owner of any estate or interest which it desires to appropriate for the purpose of disposing of its sewage, as to the amount of compensation to be paid for the same, any judge of the Superior Court, on the application of either party and notice to the other, " shall appoint " a committee to examine the premises and " estimate the amount of the compensation which shall be paid to any person for any damage, injury, or loss which he has or shall suffer by reason of the past or future acts of said city in disposing of its sewage ; and said committee may fix such compensation for all future damages to any person either at a gross sum to be paid within a time named, or at a sum to be paid annually

either during a stated number of years or so long as said city shall continue to cause such damage, injury, or loss ; " their doings to be reported to the judge who appointed them, for approval.

Following this statute, the city applied to *Judge Ralph Wheeler* for the appointment of such a committee " to estimate the amount of compensation which shall be paid to the said Platt Brothers & Company for any damage, injury, or loss which it has suffered by reason of the past acts of said city in disposing of its sewage in the Naugatuck River; and to fix all future damages at a sum to be paid annually to said Platt Brothers & Company by said city, so long as said city shall continue to cause such damage, injury, or loss. "

The city thus proposed to determine the compensation to be paid to the defendant for any estate and interest which it had already appropriated to its own use for the disposal of its sewage, and also for such as it intended to appropriate and should thereafter appropriate to the same use for a period which it left indefinite.   I agree with my associates that the statutory provision for estimating the compensation to be paid for any past appropriation could only become operative by the consent of the defendant.  I disagree with them as to the total invalidity of the provision for estimating the compensation to be made for a future appropriation.

It is often necessary to use or to take private property temporarily for public purposes.   The common law allowed this to be done without compensation in certain cases, as where travelers over a foundrous highway were allowed to proceed over land of the abutting proprietor.   The General Assembly was of opinion that it might be necessary for the plaintiff to pollute temporarily the defendant's property with its sewage, and that this necessarily might continue for an indefinite number of years.   The city is an important instrument of government.   It is not for the public interest that it should take permanently what it needs only temporarily.   It was therefore competent for the legislature to authorize a temporary taking of the defendant's property, on making just compensation.   The statute, under which such authority is

now claimed by the plaintiff, must be so construed, if it be reasonably possible, as to support its validity.    In my opinion it can be construed as authorizing a taking for one year, if just compensation for one year's use be made at the commencement of such year.    The greater includes the less. One year is none the less a stated number of years, because it is the least number.    In authorizing compensation to be fixed at a sum to be paid annually during a stated number of years, the legislature seems to me to have authorized compensation for a year's appropriation of the riparian rights, to be assessed in such a proceeding as this, at a sum to be paid at the beginning of that year.

As one of the grounds specified for the demurrer was that a committee could not be appointed simply to make the estimate asked for in the application; as that mode of estimate is objectionable on the grounds stated in the opinion of the court; and as the plaintiff offered no amendment of its application, though ample opportunity was given for it, I concur in the judgment.    I dissent from the conclusion that the Act of 1903 is wholly in excess of the legislative power, except so far as parties may consent to its provisions.