DENNIS KELLER ET AL. *vs.* THE CITY OF BRIDGEPORT.

Third Judicial District, Bridgeport, October Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

Under the general law of eminent domain, compensation for condemned property need not necessarily be made prior to its actual physical appropriation, nor do the funds for such compensation have to be provided in advance, where, as in this State, no constitutional provision so requires.

It is sufficient if adequate means are provided for a reasonably just and prompt ascertainment and the certain payment of compensation; and where the condemner is a municipal corporation, as in the present case, it is generally held that these essentials are supplied by the good faith of the public pledged to the fulfillment of its obligations.

Section 62 of the charter of the City of Bridgeport (Special Laws, 1917, § 9, p. 846) provides, with reference to the condemnation of private property for certain public uses, that all assessments contained in the report of the board of appraisal of benefits and

Keller *v.* Bridgeport.

damages shall become "immediately due and payable" after the report has been accepted by the common council and entered in its records. *Held:*

1. That in view of the practical difficulty of a literal compliance with this provision, it must be construed to mean that the assessments become payable within a reasonable time after the recording of the report; and that, in the event that a party, claiming to be aggrieved, takes an appeal to the courts (as permitted by § 69, Special Laws, 1919, p. 138), all assessments and interest thereon are temporarily suspended and are not payable until a reasonable time after the final disposition of the appeal.

2. That the acceptance of the report and the expiration of the thirty-day period without appeal, or the determination of the appeal without ordering a reassessment or the setting aside of the report, would constitute a legal taking; but the legal title to the property taken would not vest until after the payment of the damages.

3. That the charter makes the legal taking of, and the physical appropriation of, property two separate entities.

An assessment of damages, perfected under the charter, imposes upon the city an obligation as binding as a judgment of a court.

The plaintiffs claimed that in view of the provision of § 62 of the charter, that "there shall be no appropriation of private property for public use until the damages for such taking shall have been paid or deposited with the city treasurer," the failure of the defendant city to provide funds for the payment of damages assessed in connection with the widening of Middle Street invalidated the entire proceedings. *Held* that this claim was without merit, since the "appropriation of private property" therein referred to meant actual physical occupation of the condemned property as distinguished from a mere layout or legal taking, and since a holding that funds must be provided in advance of the legal taking, would confer upon the board of apportionment and taxation (the only body having authority to make appropriations) the power, inconsistent with the obvious scheme of the charter, to restrict and even frustrate the common council in establishing public improvements.

Under § 69, an appeal to the courts may be taken by one who has been assessed benefits as well as by one who has been assessed damages.

The plaintiffs could not complain of the failure of the city to fix the time within which the improvement should be opened for public use, as required by § 62, since, pending the appeal, that time could not be determined.

Argued November 12th—decided January 13th, 1925.

APPEAL by the plaintiffs from an assessment against them made by the board of appraisal of benefits and

damages of the City of Bridgeport, taken to and reserved by the Superior Court in Fairfield County, *Marvin, J.*, upon an agreed statement of facts, for the advice of this court. *Judgment advised for the defendant.*

All of the steps required by the charter of the City of Bridgeport were duly taken relative to the widening, by ten feet, of Middle Street in Bridgeport on its east side from Fairfield Avenue to Gold Street, up to the acceptance by the common council on April 2d, 1923, of the report of the board of appraisal of benefits and damages. The board assessed damages at $143,305, and benefits to private property owners of $143,305, including benefits to plaintiffs of $2,009 and to the defendant city of $90,934. Notice by publication of the assessment was given to all parties in interest on April 3d, 1923, in accordance with the charter. All of the proceedings relative to the widening of Middle Street were done in conformity with the provisions of the charter of the City of Bridgeport, except that at the time of the adoption of this report no money had been provided to pay the damages awarded therein by the board of apportionment and taxation, nor by the common council, nor were the proceeds from any sale of bonds available for that purpose, and since that time no money has been appropriated or been made available for this purpose.

There has been to date no physical appropriation of the ten feet involved in this widening. The common council of the city did not fix the time within which the widened highway should be opened for public use. No money has been paid to the owners of the land proposed to be taken for the widening, and no money has been deposited in the city treasury for that purpose, although some of the parties have demanded the same. None of the parties who were awarded damages have appealed from the doings of the board of appraisal of benefits and

damages, or the common council, in respect to this widening or layout, nor have any of them in any court action questioned or objected to any of the proceedings or actions, nor to the fact that the funds for the payment of damages awarded them have not been paid to them or deposited in the city treasury.

The charter of the city further provides that an assessment of benefits made shall be a lien upon the land on which it is made, and shall continue to be a lien thereon if a certificate of such lien shall be lodged with the town clerk of the city, within sixty days after the publication and recording of the assessments.

On June 2d, 1923, a certificate of lien for the amount of $2,009 against plaintiffs' land, signed by the duly authorized official of the city, was lodged for record with the town clerk.

The sections of the charter involved in this action are printed in the footnote.

Section 62, Charter of Bridgeport, Special Laws of 1917, § 9, p. 846: "Such report [the report of the board of appraisal of benefits and damages] shall be continued until the next regular meeting of the common council before being acted upon, and shall be printed in the journal of the common council. . . . Upon the acceptance of said report, the city clerk shall record the same; and he shall also record and attest the survey and particular description hereinbefore required. The common council shall cause a notice, signed by the mayor or city clerk, containing the names of the persons thus assessed, with the respective amounts thereof, to be published in the manner provided for by section eighty-one of said act, and such publication shall be legal and sufficient notice to all persons interested in such assessments. When said assessments shall have been recorded in the records of the common council, they shall immediately become due and payable. The common council shall order the damages thus assessed to be paid to the person or persons to whom they respectively belong, provided, if any person shall refuse or neglect to receive the amount so found due and ordered paid to him, it shall be deposited in the city treasury, to be paid to the person entitled to receive it whenever he shall apply for the same. The common council shall fix the time within which such public improvements shall be opened for public use, and may give notice of such limitation as it shall deem proper; and at the expiration of the time

*Thomas M. Cullinan,* for appellants (plaintiffs).

*John A. Cornell, Jr.,* with whom was *Alexander L. DeLaney,* for appellee (defendant).

so fixed it may make and cause to be executed all such orders as it deems necessary and proper to appropriate the same to such public purposes. There shall be no appropriation of private property for public use until the damages for such taking shall have been paid or deposited in the city treasury as aforesaid."

Section 69, Charter of Bridgeport, Special Laws of 1919, page 138, § 2: "Any person who shall be aggrieved by an act of the board of appraisal of benefits and damages or the common council in making any of the assessments of benefits or damages authorized in this act may, within thirty days after public notice is given of the acceptance of the report of such board by the common council, make written application for relief to the Superior Court, or where the amount claimed by the appellant shall be two thousand dollars or less to the Court of Common Pleas for Fairfield County; provided he shall give notice to the city of such application by causing a copy to be left with the city clerk . . . at least twelve days before the return day of such appeal, and within thirty days after such public notice is given. Said Superior Court or Court of Common Pleas, may make such order as equity may require, and may allow costs to either or neither party and may inquire into the validity of the proceedings upon which such assessment is based. No land taken for a public square, park, street, highway, bridge or walk, or alteration thereof, laid out under the provisions of this act, shall be occupied by the city until the expiration of the time limited for the giving of notice to said city of such an application for relief nor shall any land be occupied as to which such an application has been made until such application shall be finally disposed of by said Superior Court or Court of Common Pleas, except on appeals where no question is raised as to the validity of the proceedings upon which such assessment is based; provided any person claiming to be aggrieved shall be deemed, by taking an appeal as provided in this section, to have waived any claim of illegality arising from the failure of such board to give or file the notices required in section one of this act."

Section 97, Charter of Bridgeport, Special Laws of 1917, § 12, page 848: " . . . No money, other than that appropriated as aforesaid by said board, at said meeting, on the last Tuesday of February, shall be expended for any purpose, unless a special appropriation therefor by the common council shall first be approved by a two-thirds vote, taken by yeas and nays, of all the members of the common council; but the common council shall have no power to make any such special appropriation unless the unappropriated revenues of the city are

WHEELER, C. J.   The appellants analyze the issues presented in this reservation as two: (1) "Can any municipality, under the law of eminent domain, and in particular can the City of Bridgeport, under its charter powers, lay out a highway, along lines which would take valuable private property, without any money in the treasury or funds available to pay the resulting damages? (2) Can the city, by a mere paper or record layout, without any means of actually acquiring the land necessary to make the proposed improvement, legally compel property owners to pay assessments for benefits claimed to result from such paper layout, which the city cannot make effective on account of its lack of funds?"

In the absence of constitutional provision requiring it,—and there is no such requirement in our Constitution—a municipality is not required prior to the taking, that is, the physical appropriation, of private property for public use, to pay for or set aside funds for the same. Its duty is authoritatively expressed in *Crozier* v. *Krupp*, 224 U. S. 290, 306, 32 Sup. Ct. 488, to be as follows: "Indisputably the duty to make compensation does not inflexibly, in the absence of constitutional provisions requiring it, exact, first, that compensation should be made previous to the taking—that is, that the amount should be ascertained and paid in advance of the appropriation—it being sufficient, having relation to the nature and character of the property taken, that adequate means be provided for a reasonably just and prompt ascertainment. and payment of the compensation; second, that, again always having reference to

sufficient for the purpose, and the order or resolution making such special appropriation shall state specifically what the unappropriated revenues of the city thus appropriated consist of, nor shall any board contract debts in excess of its appropriations, and if any such debt be so contracted it shall not be paid out of any future appropriation. . . . "

the nature and character of the property taken, its value and the surrounding circumstances, the duty to provide for payment of compensation may be adequately fulfilled by an assumption on the part of government of the duty to make prompt payment of the ascertained compensation—that is, by the pledge, either expressly or by necessary implication, of the public good faith to that end."

Not alone must there be authority provided by which a mode for ascertaining the compensation and a recognition of the duty of making payment is given, but provision made which will certainly give the owner compensation. When the condemner is a public body and the compensation is a public charge behind which the good faith of the public stands as a guaranty, this is held to provide such certainty in obtaining the compensation as to satisfy the Constitution. 2 Lewis on Eminent Domain (3d Ed.) p. 1166. This is one of the accepted principles of the law of eminent domain. Our own decisions have impliedly accepted and applied this principle. *Reiley* v. *Waterbury,* 95 Conn. 226, 229, 111 Atl. 188; *Waterbury* v. *Platt Bros. & Co.,* 76 Conn. 435, 440, 56 Atl. 856; *Hawley* v. *Harrall,* 19 Conn. 142.

The charter of Bridgeport provides a mode for ascertaining the compensation to be paid for land taken for the widening of a street, and when the legal taking is an accepted fact, the assessment of the damages made becomes as binding an obligation upon the municipality as a judgment of a court. It is conceded that provision for compensation must precede the physical taking or appropriation of the land for this street widening. This accords with a specific provision of the charter (Charter of Bridgeport, § 62, Special Laws of 1917, p. 846, § 9), and, aside from that, is the law of this jurisdiction. *Reiley* v. *Waterbury,* 95 Conn. 226, 230, 111 Atl. 188; *Bishop* v. *New Haven,* 82 Conn. 51, 72 Atl. 646.

Let us next ascertain what are the charter requirements in the taking of land for the widening of a street, and whether these have been violated by the defendant in the proceedings thus far taken. We need not trace the steps preceding the adoption by the common council of the report of the board of appraisal, since no question arises concerning their regularity. Section 62 of the charter provides for the acceptance by the common council and the recording of the report of the board of appraisal of benefits and damages. The section then proceeds: "When said assessments shall have been recorded in the records of the common council they shall immediately become due and payable." Both damages and benefits are included within this provision. The practical difficulty of making payment of benefits and damages immediately upon the recording of the report has led us to construe a similar provision, as we do this, to mean that the assessments are payable within a reasonable time after the recording. *Waterbury* v. *Platt Bros. & Co.*, 76 Conn. 435, 440, 56 Atl. 856; *Reiley* v. *Waterbury*, 95 Conn. 226, 111 Atl. 188.

The charter of defendant, in § 69 as amended (Special Laws of 1919, pp. 138, 139), provides for an appeal by any person aggrieved within thirty days from the acceptance of the report of the board of appraisal of benefits and damages to the Superior Court, where the amount claimed exceeds $2,000, as in this case, and authorizes the court to make such order as equity may require. Necessarily the effect of such an appeal is to suspend, until the appeal is disposed of, the provision in § 62, that the assessments shall become due and payable immediately upon their recording. And when the appeal is disposed of, the reasonable time in which the parties would have had to carry out their obligation under the report as accepted, begins to run from the date of disposition of the appeal. The assessments be-

come due and payable within a reasonable time after the disposition of the appeal. The General Assembly should not be held to have intended to require a forthwith payment of the damages and benefits, and, in the event that the disposition of the appeal should require a new assessment, subject the parties to the inconvenience of repaying the amounts paid and the defendant to the possibility of loss through a change in the financial ability of those to whom benefits have already been paid. The application to the Superior Court, provided for in § 69, has the same purpose as, for example, the "appeal from such appraisal . . . for a reappraisal" in *Potter* v. *Putnam,* 74 Conn. 189, 50 Atl. 395. All such applications or appeals have a common purpose, to provide for a review of the assessment in whole or part as made by a local board. An application or an appeal of this character, in the absence of specific provision to the contrary, suspends the payment of either benefits or damages until the review is finally determined, and that would mean, in case of appeal, until the appeal was determined and a reasonable time thereafter had elapsed. The acceptance of this report by the common council, in the absence of appeal, would have established the benefits and damages and the liability of the defendant city for the damages and of the property owners for the benefits, as found in the report, could not thereafter have been contested; and both benefits and damages would have become due and payable within a reasonable time—following the expiration of the thirty-day period allowed for an appeal—after the assessments, as accepted, had been recorded. The appeal, when taken, suspends the execution of the report until the appeal is determined and a reasonable time thereafter has elapsed for the payment of the damages and benefits. The defendant agrees with this construc-

tion of the effect of the appeal, but the plaintiffs do not, as we understand their counsel. The construction which we give to these provisions of the charter makes a reasonable procedure and one which we think the General Assembly intended. While the acceptance of the report and the expiration of the thirty-day period without appeal, or, following the determination of the appeal without a reassessment or setting aside of the report, would constitute a legal taking, yet the legal title to the property taken would not vest until after the payment of the damages as determined. The legal taking of the property and its physical appropriation, are, by the charter, made two separate entities.

Section 69 of the charter as amended (Special Laws of 1919, page 138, §2), provides: "No land taken for a public , . . street . . . shall be occupied by the city until the expiration of the time limited for the giving notice to said city of such an application for relief nor shall any land be occupied as to which such an application has been made until such application shall be finally disposed of," etc. The occupation referred to obviously is the physical occupation, and follows the legal taking of the land. Equally obvious is it that a physical appropriation is referred to in the language of § 62: "The common council shall fix the time within which such public improvements shall be opened for public use, and may give notice of such limitation as it shall deem proper; and at the expiration of the time so fixed it may make and cause to be executed all such orders as it deems necessary and proper to appropriate the same to such public purposes." The plaintiffs rely very largely upon the language immediately following: "There shall be no appropriation of private property for public use until the damages for such taking shall have been paid or deposited with the city treasurer." Appropriation,

they say, as here used, is equivalent to the legal taking of the land, that is, it relates to the time when the assessment of benefits and damages is confirmed by the common council. This provision of the charter is merely a reiteration of the constitutional provision that "the property of no person shall be taken for public use, without just compensation." "Taken," in this provision of the Constitution, has been construed by us to mean a physical occupation or possession. We say in *Woodruff* v. *Catlin*, 54 Conn. 277, 297, 6 Atl. 849: "In its application to the condemnation of land for railway use, the word 'taken' in the Constitution means the exclusion of the owner from use and possession . . . by the railroad corporation at the termination and as the result of judicial proceedings." See also *New York, N. H. & H. R. Co.* v. *Long*, 69 Conn. 424, 435, 37 Atl. 1070. As used in the sentence quoted from § 62, the taking refers to the legal taking and pre-supposes payment following the date when the damages are due and payable, while the appropriation refers to the physical occupation and contemplates the payment of the damages prior to such occupation. *Kelly* v. *Waterbury*, 83 Conn. 270, 76 Atl. 467; *Reiley* v. *Waterbury*, 95 Conn. 226, 111 Atl. 188.

A consideration of great practical importance confirms our construction that an appropriation relates to a physical appropriation and not to the legal taking, and hence that it cannot precede such taking. Sections 96 and 97 of the charter require that all expenditures for the financial needs of Bridgeport for the fiscal year shall be made by the board of apportionment and taxation in February of each year. Since it could not be known in advance of the report of the board of appraisal of benefits and damages what amount was required to meet the cost of taking prop-

erty for a street opening or extension, it would be impracticable to leave such a power to the action of the board and put it in its power to block this and all public improvements. While it is true that the board could act at a time other than in February, the practical difficulties would still prevent it from budgeting the cost of such improvement, and, further, it would place the decision of whether to make the improvement in this board rather than in the common council, where the charter deposits it. A fresh tax levy for each new improvement would effectually block action, not alone in an improvement deemed desirable from a public point of view, but those which were of urgent necessity and even mandatory. Consideration of a like question was involved in *Dellaripa's Appeal*, 88 Conn. 565, 569, 92 Atl. 116, and thus disposed of: "The amount of special assessments cannot be known until laid, and hence the net amount to be paid by those specially benefited, and the amount remaining to be paid by the city, cannot be ascertained until that time. No appropriation of the share to be paid by the city could therefore be made until after the assessments were laid. This practical difficulty fully answers this claim to an appropriation preceding the assessment." What was said in *Bishop* v. *New Haven*, 82 Conn. 51, 57, 72 Atl. 646, is applicable here: "By the provisions of the charter, when the original assessment was made, the plaintiffs had the option either to accept the sum awarded them, or to continue to occupy their premises while their appeal was pending. They could not do both. They elected to keep possession of their property, with the hope of obtaining an increased assessment. To allow them interest upon the amount of the reassessment from the date of the original assessment would be in effect to permit them, while their appeal was pending, to have both the use

of their property and the use of the money found to be its equivalent."

The appeal suspended the payment of not only the benefits assessed against the plaintiffs, but of all benefits and damages assessed in favor of any party. Interest did not run until, in case the report was not set aside or a reassessment ordered, a reasonable time had elapsed after the final disposition of the appeal. There was no occasion for the defendant city to make provision for the payment of the damages pending the appeal, or to provide for these until a reasonable time had elapsed after the termination of such appeal. We held, in *Bishop* v. *New Haven, supra,* that "the fact that the defendant's bank balance was at times insufficient to meet the amount of the orders deposited, was of no consequence to the plaintiffs while they refused to accept the orders."

Further, we think the defendant is right in its claim that § 97 does not commit to the board of taxation and apportionment restrictive power over appropriations to meet the cost of taking property for a street widening. The power to lay out and widen a street is by the charter given exclusively to the common council. Its action in this particular cannot be restricted or controlled by this board. "This prohibition is plainly for the protection of the city against its officers and agents." *Whitney* v. *New Haven,* 58 Conn. 450, 20 Atl. 666.

Comparison with other charters having like, or similar provision, which have been before this court, fully support the defendant in its claim that expenditures or debt, within the meaning of § 97, does not include an appropriation of money for the payment of the damages in a street-widening project. *Cook* v. *Ansonia,* 66 Conn. 413, 34 Atl. 183; *Whitney* v. *New Haven,* 58 Conn. 450, 461, 20 Atl. 666; *Park Eccl. Soc.* v. *Hartford,* 47 Conn. 89.

We disagree with the defendant in its claim that none except the owners of land taken can complain of the failure of the city to provide funds with which to pay the damages. Those assessed benefits are or may be interested in the assessment of damages. The two are parts of one proceeding, the benefits determined in some part at least by the amount of the damages. If the person assessed to pay for benefits to his property could not question the defects or irregularities in the assessment of damages, the municipality might be in the position of having received benefits when the damages were so defective as to require the setting aside of the assessment. The essential unfairness of such a position is apparent, and then, too, it is in conflict with the charter, which provides that the benefits assessed shall not exceed the damages.

The fact that no money had been made available to pay these damages subsequent to the adoption of the report, was immaterial, since, as we have seen, there could be no duty of appropriating such funds until after the disposition of this appeal. The fact that the defendant city did not "fix the time," under § 62, "within which such public improvements shall be opened for public use," was also immaterial, since it has reference to the physical appropriation of the land, and not to the legal taking following the adoption of the report of the benefits and damages. This time could not be determined pending the appeal.

The Superior Court is advised that we answer questions 1, 2, 4, 5 and 15 "No"; questions 3, 13, and 14 "Yes"; questions 7 and 8 in accordance with the opinion, and the other questions we do not answer for the reason that we regard them as either included in the foregoing questions, or unnecessary, or academic.

In this opinion the other judges concurred.