[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter comes before the court on the basis of an appeal from an assessment of damages by the Commissioner of Transportation resulting from a condemnation of a portion of the plaintiff appellant Lois Simpson's property located on Wheeler's Farms Road in the City of Milford.
The plaintiff herein, Lois Simpson, is appealing from this Assessment of Damages pursuant to the provisions of Connecticut General Statutes §§ 13a-73(b), 13a-73(e) and 13a-98e.
The Notice of Condemnation and Assessment of Damages (Exhibit B) is for the lay out, alteration, extension, widening, change of grade, drainage and improvement of Wheeler's Farms Road within the City of Milford. The taking is for 566 square feet of the property of the plaintiff. In addition, a temporary easement CT Page 5325-EEEEE consisting of 1,742 square feet was taken for a work area for the purpose of excavating and constructing a retaining wall and appurtenances during the construction of Wheeler's Farms Road. Furthermore, the taking consisted of the right to install a sediment control system running a distance of 86 linear feet. The easement for the work area and sediment control line was for a period of one year but was to terminate automatically upon the completion of the work. Damages were assessed by the Commissioner at $15,500.00
Lois Simpson has taken this appeal from his actions claiming the assessment of damages is inadequate.
This matter has been referred to the undersigned judge trial referee for a hearing and judgment either upholding the Commissioner or finding for the plaintiff and entering judgment for whatever damages the court finds appropriate.
The land in question is a portion of a residential lot formerly the plaintiff's residence but is now being rented as her sole source of income. The tract consists of .64 acres and is a nonconforming use located in an RA1 zone a one acre residential zone and lies on the easterly side of Wheeler's Farms Road. It is a nonconforming use because of its being in a one acre zone.
The court has heard the testimony of various witnesses, including real estate appraisers, for both the plaintiff and the defendant. It has examined the various exhibits submitted by the parties and examined the briefs submitted. In addition, the court has visited the premises and has viewed the conditions existing after the completion of the project.
"The constitution provides that no property shall be taken for a public use without just compensation. Const. Of Conn. Article 1 So. 111. We have said that just compensation means a fair equivalent in money for the property taken as nearly as its nature will permit; Waterbury v. Platt Bros. Co., 76 Conn. 435,440, 56 A. 856; New Haven Water Co. v. Russell, supra, 368; and that market value is ordinarily the measure of compensation, although this is not necessarily so. State v. Suffield andThompsonville Bridge Co., 82 Conn. 460, 467, 74 A. 775. . . . In United States v. Nahaut, 153 F. 520, 82 C.C.A. 470 . . . the court pointed out (p. 521) that the question was to be decided upon equitable principles . . . `The paramount law intends that the owner shall be put in as good condition pecuniarily by a just CT Page 5325-FFFFF compensation as he would have been if the property had not been taken . . . The question of just compensation contemplated by the constitution is more an equitable question than a strictly legal or technical one;' and it also said (p. 524): `The primary question of course is just compensation and this means full equivalent for the property taken.'" Winchester v. Cox, 129 Conn. 106,114.
The taking in fee simple consisted of an area 6 feet by 112 feet for an area of 566 square feet. The temporary work area easement consisted of an area of 1,742 square feet.
"When, as in the present case, only part of a tract of land is taken for the public use, `just compensation' includes recovery for the part taken and recovery for any damages visited upon the remainder which result from the taking. In such a situation damages are measured by determining the difference between the market value of the whole tract as it lay prior to the taking and the market value of what remained thereafter. (Internal citations omitted)." Bowen v. Ives, 171 Conn. 231, 236.
"In a condemnation case, the referee is more than a trier of facts or an arbiter of differing opinions of witnesses. `He is charged by the General Statutes and the decisions of this court with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge, and his viewing of the premises.'" Bower v. Ives, supra, 239; Birnbaum v. Ives,163 Conn. 12, 21.
In examining the testimony of the appraisers for the respective parties, the court notes that their estimates of the before taking value are relatively close, the plaintiff's estimate being $161,000.00 and the defendant's being $153,000.00.
Photograph Exhibit D as well as photographs contained in the defendant's appraisal Exhibit 3 clearly depicts the somewhat rural character of the area prior to the widening of Wheeler's Farms Road. The after condition shows a much wider, more urban highway allowing for heavier traffic with a speedier movement of vehicles.
In its determination of the before taking value, the court is of the opinion that the positions taken by the defendant's appraiser are not as sound as that of the plaintiff. The CT Page 5325-GGGGG contention, for example, that the subject property contained excess land is without merit when one realizes that the parcel is a nonconforming use in a one acre residential zone. The subject parcel contained a built-in two car garage. Two of the comparables did not, nevertheless, no benefit was given for the two car garage. The third comparable had a detached two car garage. With very little authority for her position, a penalty was imposed against the subject parcel. Also, the benefit given for the fireplace was an amount for which the defendant's appraiser conceded a fireplace could not be built. Also, it is difficult for the court to understand the penalty imposed against the subject parcel for location and frontage. The frontage was conceded to be at least equal to that of the comparables used. As for location, the plaintiff's property is in a one acre zone with its more spacious surroundings as opposed to comparables with their smaller lot size and their more dense location.
The court finds the before taking value to be $161,000.00.
As for the post taking value, it is here that the parties are widely divergent. The defendant has made use of the same comparable sales and attached to the properties a 10% negative value resulting from the impact of the five- to six-foot concrete wall with the four-foot chain link wire fence affixed to the top of it. This is based on her opinion and eight years of experience working for the Department of Transportation. She acknowledges that there are no exact comparables. In addition, the appraiser found $500.00 to be the value of the temporary rights taken. The total after taking value as claimed by the defendant amounts to $138,000.00. This represents $15,000.00 for the damages to the value of the property (i.e., the 10% appeal adjustment) plus the assessment for the temporary taking of $500.00 for total damages of $15,500.00.
The court, in reaching its conclusion as to the damages incurred, gave considerable weight to what it observed during its visit to view the property. The effect of the concrete wall with the chain link fence affixed to the top of it had a far greater impact on the court than the 10% negative adjustment found by the defendant. The concrete wall with its variation in the color of the concrete and the chain link fence atop the wall had a considerable negative effect upon a viewer from an aesthetic point of view, thus reducing the desirability of the property for any prospective tenant or purchaser. CT Page 5325-HHHHH
The plaintiff, in assessing the after taking value, found no comparable sales within the area, that is, he found no sales of residential property with a 5- to 6 foot high concrete wall and a four-foot high wire fence atop the wall facing the front of the property. Finding no such sales, rather than adopting the comparable sales approach, he chose a capitalization formula charging a $300.00 per month reduction in the rental value of the property over a 25 year economic life of the parcel. Applying a 10% capitalization rate against an estimated annual rent loss of $3,600.00, the plaintiff arrived at a loss of $36,000.00. A figure of $1,000.00 was applied to the land actually taken leaving a total property value after the taking of $124,000.00.
The evidence presented to the court finds no comparable sales of residential property with a concrete wall and a fence affixed to it. What has been presented to the court is the same comparable sales for both before and after values and applying a somewhat arbitrary 10% negative adjustment as opposed to a loss in value based on a capitalization of income, a formula not ordinarily used in the appraisal of one family residences.
"Where the usual means of ascertaining market value are lacking, such a sales of like property, other means must, from the necessity of the case be resorted to. `In condemnation cases market value is usually established by sales of like property. It does not follow, however, that the owner is precluded from proving value when there have been no comparable sales. In such cases resort may be had to best available data which, even though speculative, under some circumstances may be sufficient to allow a jury to make an informed estimate of value. . . .'" Feigenbaumv. New Britain Housing Site Development Agency, 164 Conn. 254,260.
As for the temporary damages resulting from the taking, the plaintiff claims temporary damages of $5,200.00. This figure is based on an average between a monthly rental concession of 50% over the construction period and an assumed total loss in rental income if the property was vacant when construction commenced.
Both of these figures are highly speculative. The plaintiff concedes on page 50 of his appraisal, Exhibit H, that "the appraiser's judgment and experience are the only available measure of the impact of the noise, dust and construction activities on the subject's fair rental value." CT Page 5325-IIIII
The defendant takes the position that temporary inconveniences are not compensable, equating such inconvenience to snow plowing in the wee hours of the morning or to dust and disruption generated by the resurfacing of a highway. While the plaintiff relies heavily and justly so on the theory that the mere inconvenience of noise and dust are not unique to the subject property and thus not compensable; In re: Appropriationof Easement from LEAS, 449 N.E.2d 780, 784, 5 Ohio App. 3rd 120 (1981); Downside Risk v. Metropolitan Atlanta Rapid TransitAuthority, 274 S.E.2d 653, 658, 156 Geo. App. 209 (1980); the subject property has been injured beyond mere noise and dust. The presence of large construction-type equipment on the property, the difficulty of egress and ingress during the construction due to the presence of rebars are unique to the subject property. "The mere fact that injuries will be temporary and incident to the period of construction only is no ground for disallowing recovery, since a purchaser would pay less if he knew such injuries were to be inflicted." Bowen v. Ives, supra 258, 4A Nichols, Eminent Domain (3d Ed.) S. 14.24 p. 14-128.2; seeAndrews v. Cox, 127 Conn. 455, 17 A.2d 507.
These inconveniences, however, did not exist for the entire time but only for a period of about two to three months. While there were concessions made, it is difficult to measure them against the fact that the plaintiff, in an effort to maintain a continual rental, which was her sole income was in fact willing to accept rental that was approximately $200.00 less than normal. Considering the plaintiff's formula, the court finds that a figure approximating one-half of the temporary damages claimed or $2,600.00 would be more appropriate.
In summation, the court finds the before taking value to be $161,000.00, the after taking value to be $124,000.00 ($1,000.00 + $36,000.00) and the temporary compensatory damages to be $2,600.00 for total damages of $39,600.00.
A fair and just rate of interest on the amount over and above the assessment as levied by the Commissioner shall be at the rate of 4.75% the rate on five year treasury notes on September 2, 1993.
The Court
By CT Page 5325-JJJJJ
Curran, JTR