[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff herein, the First Norwalk Land Corporation, has appealed from an assessment of damages by the defendant Commissioner of Transportation of the State of Connecticut for a partial taking of property of the plaintiff located on Route 123 Canaan Avenue) in the City of Norwalk.
"The constitution provides that no property shall be taken for a public use without just compensation. Const. Of Conn. Article 1 So. 111. We have said that just compensation means a fair CT Page 146-Q equivalent in money for the property taken as nearly as its nature will permit; Waterbury v. Platt Bros. Co., 76 Conn. 435,440, 56 A. 856; New Haven Water Co. v. Russell, supra, 368; and that market value is ordinarily the measure of compensation, although this is not necessarily so. State v. Suffield andThompsonville Bridge Co., 82 Conn. 460, 467, 74 A. 775. . . . In United States v. Nahaut, 153 F. 520, 82 C.C.A. 470 . . . the court pointed out (p. 521) that the question was to be decided upon equitable principles. . . . `The paramount law intends that the owner shall be put in as good condition pecuniarily by a just compensation as he would have been if the property had not been taken. . . . The question of just compensation contemplated by the constitution is more an equitable question than a strictly legal or technical one;' and it also said (p. 524): `The primary question of course is just compensation, and this means full equivalent for the property taken.'" Winchester v. Cox,129 Conn. 106, 114.
The taking is for a full and perpetual easement alone Route 123, New Canaan Avenue, encompassing some 2,356.57 square feet. "When, as in the present case, only part of a tract of land is taken for the public use, `just compensation' includes recovery for the part taken and recovery for any damages visited upon the remainder which result from the taking. In such a situation damages are measured by determining the difference between the CT Page 146-R market value of the whole tract as it lay prior to the taking and the market value of what remained thereafter. (Internal citations omitted)." Bowen v. Ives, 171 Conn. 231, 236.
"In a condemnation case, the referee is more than a trier of facts or an arbiter of differing opinions of witnesses. `He is charged by the General Statutes and the decisions of this court with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge, and his viewing of the premises.'" Bower v. Ives, supra, 239; Birnbaum v. Ives,163 Conn. 12, 21.
A notice of assessment of damages and of condemnation was filed with the Superior Court for the Judicial District of Stamford/Norwalk on or about February 3, 1992. The premises described therein were found to be necessary for the layout, alteration, extension, widening, change of grade and drainage and improvement of the highway commonly known as Interchange Ramps Conn. Routes 15 and 123.
The premises taken are for a full and perpetual easement to slope for the drainage of the highway, encompassing an area of 0.058 of an acre more or less, being along the southerly side of the present New Canaan Avenue Route 123. The property is also CT Page 146-S subject to an Electric Distribution Easement in favor of the Connecticut Light Power Co.
The project for which this taking has occurred involves the reconstruction and alteration of the on/off ramps connecting Route 15 (Merritt Parkway) with Conn. Route 123.
The damages were assessed at $2300.00 from which the plaintiff has appealed to this court alleging that the assessment of damages by the Commissioner of Transportation is inadequate.
At the time of the taking, the subject property was part of a larger overall parcel consisting of some 11.375 acres. The land is zoned residential (AAA and A), being in a one acre zone. On June 21, 1989, a permit was obtained from the City of Norwalk designating the site as a special conservation cluster area which plan allowed for the construction of 18 single housing units as opposed to some 10 or 11 prior to the permit being issued. All or a substantial amount of the infrastructure had been completed prior to the taking. Under the Cluster Housing permit, the plaintiff waived his right to access the property via Felix Lane. Also, the plaintiff was prohibited from building upon or crossing a brook which traversed the property. The plaintiff's only access to his property was via Route 123. The plaintiff alleges that in order for him to build the infrastructure, i.e., sewer, water, CT Page 146-T electrical and other services, it was necessary for him to construct a gravel drive accessing the property.
Subsequent to the taking, he alleges that this access was removed, preventing him from gaining access to his property so as to continue his development thereof. In addition, he claims that the contractor trespassed upon the property with construction equipment and materials incidental to the project. It is the plaintiff's contention that any prospective buyer observing these conditions could only conclude that they would interfere with his ability to proceed with the development during the time of the state's project. At or near the end of the project new curbing was installed along Route 124 further impeding access.
The defendant alleges that there was no gravel driveway and that they neither trespassed on nor deprived the Plaintiff of any access to his property and that by merely requesting such, access would have been assured. They allege that the plaintiff was an experienced developer well aware of this.
The court finds that a gravel drive did in fact exist at the time of the taking. Plaintiff's Exhibit A entitled, "Town of Norwalk Map Showing Easement Acquired from First Norwalk Land Corp. By the State of Connecticut Interchange Ramps — Conn. Routes 15-123 dated March 1991" does in fact disclose the CT Page 146-U existence of a gravel drive at the time of the taking. This same map is part of defendant's appraisal report Exhibit 7. The court found no evidence of its existence during its view of the property concluding that it was removed by the contractor during construction.
The plaintiff claims that the trespass and denial of access continued throughout the entire construction period which is computed to be 2.499 years. With this the court does not agree. While the witness Mr. Wrinn, an experienced builder, claims to have complained of these conditions, defendants claim no knowledge of the complaints claiming they would have corrected the situation had it been brought to their attention. Based on the testimony of Wrinn himself, the court finds that the plaintiff was denied access for a period of approximately nine months.
Both parties agree that the highest and best use of the property is for residential purposes. The defendant's appraiser has determined that the highest and best use of the subject property is for residential development. To this end, the defendant has, using comparable sales, based his value on an arbitrary one acre lot. He found that damages as of the date of taking to be $2300.00 with a before taking value of said lot to be $160,000.00 and the after taking value to be $157,700.00 for CT Page 146-V said lot.
The plaintiff, however, found the highest and best use to be the continued development of the cluster housing project. In determining value, the plaintiff's appraiser has used what he describes as the "Abstraction Method" of valuating the subject development with 18 established sites capable of being improved. Under this method, an appraiser establishes a typical ratio of site value to total property value from comparable improved properties. This ratio is then applied to the total value of the property being appraised to estimate the value of the land.
Under this method, the per site value of the subject property was found to be $117,972.00 or a total before taking value for the entire parcel of $2,123,500.00.
In arriving at an after taking value, the plaintiff finds the taking area to consist of 2,356.57 square feet or 0.4656 percent of the total acreage of 11.375 acres. Considering a full and perpetual easement to be tantamount to taking of the fee and applying the percent taken to the before taking value total, plaintiff claims the actual physical taking damages to be $10,100.00.
While plaintiff's appraiser is of the opinion that a full and CT Page 146-W perpetual easement is akin to a taking of the fee simple, the court does not agree. While the state may have almost total control over the property, the same acreage exists after the taking as before and the plaintiff, so long as he does not interfere with the easement, can make any other use of the property that he would legally be permitted to do. Alemany v.Commissioner of Transportation, 215 Conn. 437, 441-442. In view of the degree of the taking, however, and likelihood that the plaintiff would be able to make very little use of the easement area, the court would find a nominal reduction of five percent.
The court would therefore compute the easement damage to amount to $9,595.00. The construction damages to the remainder of the property the court finds to be $95,085.00 based on a formula of $2,113,400.00 x 6% x .75 years.
The court finds the before taking value to be $2,123,550.00 and the after taking value to be $2,008,320.00 with the plaintiff's total damages to be $104,680.00. As for interest on the amount of the court's reassessment over and above the amount deposited with the clerk of the court, the court finds the rate of 6.04% to be just and reasonable it being the rate for three year treasury notes issued on February 1, 1992.
The Court CT Page 146-X
By Curran, J.