[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT
The Shelton Economic Development Commission (SEDC), as authorized by statute, has taken by eminent domain certain property owned by the defendants and known as 37 Canal Street, Shelton, Connecticut. A Statement of Compensation has filed with the Clerk of the Superior Court for the Judicial District of Ansonia/Milford assessing damages in the amount of $95,000.00. The defendants have appealed from this assessment and have asked this court for a reassessment of the damages incurred by the taking.
It is their contention that the Statement of Compensation does not reflect the fair market value of the property taken. They claim that the valuation was not based on the highest and best use of the property, and; that the deduction of $785,000.00 from the unimpaired market value (the estimated cost of remediation) was contrary to the basic principles of Connecticut law. They further allege that the estimated costs of remediation include costs on property other than the subject property, and; that they reflect development costs rather than remediation. Furthermore, they contend that the costs are unreasonably high due to the fact that they were incurred prior to rather than at the time of development and also that they do not reflect a typical arms-length transaction. In addition, they allege a windfall to the SEDC due to reimbursement from the State and Federal governments as well as the existence of additional State funding.
The property is presently within an IB-2 Industrial zone and is a location designated as a Special Development Area. This would permit a P.D.D. overlay zone (Planned Development District).
The Economic Development Plan created in the mid-80's called for residential development north of Bridge Street and industrial development south of Bridge Street to Route 8. CT Page 12535
In 1989, pursuant to the terms of the P.D.D., a proposal for residential use of the property was submitted to the Planning and Zoning Commission. The conceptual plan that was submitted called for the construction of two high-rise residential towers with several amenities, including a marina. The concept was approved subject to the submission of more detailed plans. Nothing further has occurred to date.
Subsequently, a Plan and Marketing Study was conducted by the SEDC resulting in a recommendation for a light industrial use of the property. The plan was approved with the State requiring an investigation into the environmental condition of the property. The resulting investigation found the subject to be contaminated. It was determined that the property needed remediation. A plan was developed that would achieve compliance with the Remediation Standard Regulations.
The plan called for the removal of all UST's (Underground Storage Tanks) and the removal of the surrounding contaminated soils, the disposal of all soil that exceeded the P.M.C.; soil that exceeded the DEC to be placed upon the slab and covered with four feet of clean soil. This would elevate the property above the 100 year flood plain. The concrete slab which covered a substantial portion of the area was to be left in place as a cover for the contaminants that might lay below the slab. The contaminants that were along the riverbank were to be covered with noxious vegetation to discourage access by humans. Finally, an environmental land use restriction was to be placed upon the land records to restrict the development and/or disturbance of the contaminated soils left on the site. The work was completed and approved by the DEP.
The court has heard all of the evidence, reviewed the appraisals submitted in evidence and has, in the company of counsel, viewed the premises.
"The Constitution provides that no property shall be taken for a public use without just compensation." Constitution of Connecticut, Article I, Section 11. "We have said that just compensation means a fair equivalent in money for the property taken as nearly as its nature will permit;Waterbury v. Platt Bros. Co., 76 Conn. 435, 440, 56 A. 856; NewHaven Water Co. v. Russell, supra, 368; and that market value is ordinarily the measure of compensation, although this is not necessarily so. State v. Suffield and Thompsonville Bridge Co., 82 Conn. 460, 467,74 A. 775. . . . In United States v. Nahaut, 153 F. 520, 82 C.C.A. 470 . . . the court pointed out [p. 521] that the question was to be decided upon equitable principles. . . . `The paramount law intends that the owner shall be put in as good condition pecuniarily by a just compensation as CT Page 12536 he would have been if the property had not been taken. . . . The question of just compensation contemplated by the constitution is more an equitable question than a strictly legal or technical one' and it also said [p. 524] : "The primary question of course is just compensation and this means full equivalent for the property taken.'" Winchester v. Cox,129 Conn. 106, 114.
In other words, "the amount that constitutes just compensation is the market value of the condemned property when put to its highest and best use at the time of taking . . . the fair market value is the price that a willing buyer would pay a willing seller based on the highest and best use of land assuming of course that a market exists for such optimum use." Commissioner of Transportation v. Towpath, 225 Conn. 529, 540.
"The highest and best use concept . . . in estimating the value of real estate by appraisers has to do with the use which will most likely produce the highest market value, greatest financial return or the most profit from the use of a particular piece of real estate. . . . In determining the highest and best use, the trial referee must consider whether there was a reasonable probability that the subject property would be put to that use in the reasonably near future and what effect such a prospective use may have had on the property's market value at the time of the taking." (Internal quotations and citations omitted).Northeast Ct. Economic Alliance Inc. v. ATC Partnership, 256 Conn. 813,829.
The SEDC is of the opinion that the highest and best use of the property is for a light industrial use, while the defendants claim the highest and best use of the property to be residential and recommend a residential use similar to the concept proposed some years earlier. In order to effectuate this, there would have to be a zone change which they contend would be 85% reasonably probable.
In reviewing the comparable sales used by both appraisers, the court notes that the SEDC's appraiser used comparables located in the City of Shelton which were unimpaired as it relates to contamination, whereas two of the defendants three appraisals were located in the City of Danbury, several miles distant from the center of Shelton. The defendant is basing his appraisal solely on a change of zone. He, in fact, notes that if the property were valued as light industrial property, then his finding of value would be similar to the plaintiff's finding of value unimpaired.
In his appraisal, the defendants state that there is a high probability but not a certainty that the creation of a P.D.D. zone permitting multi-family development would be achieved. He goes on to say that the CT Page 12537 present value must perforce give credence to both the upper limit (multi-family) use and the lower limit (IB-2 zoning). In doing so, he finds the lower limit valuation to be $970,000.00 and the upper limit (multi-family) to be $4,100,000.00. He considers only unimpaired value and gives no consideration to remediation. The plaintiff finds the highest and best use for the property to be light industrial. He finds the unimpaired value of the property to be $880,000.00 and deducts from that figure the cost of remediation $785,000.00, indicating the total market value to be $95,000.00.
In Northeast Ct. Economic Alliance Inc. v. A T C Partnership, our Supreme Court has held that "if the comparable sales method of valuation is employed the fair market value may be arrived at by (1) evidence of sales of uncontaminated comparable property, (2) discounted by some factor not necessarily dollar for dollar, but not necessarily precluding dollar for dollar, in the fact finding discretion of the court including the costs of remediation.
The court finds that the highest and best use of the property is for a light industrial use. The court does not agree however with the cost of remediation which the plaintiff assesses against the fair market value of the subject property.
The court in reaching its conclusion as to the fair market value of the site does not include the cost of removal of the UST's (underground storage tanks) in Cornell Street and consequently the removal of the surrounding contaminated soil. Also the court does not include the cost of placing 4 feet of soil over the property even though by doing so they were covering the contaminated soil.
The storage tanks and the surrounding soil were off site from the property being taken and therefore not a cost of remediation. As for the 4 feet of fill placed upon the site the purpose for so doing was to raise the level of the property to the 100 year flood plain level. This the court finds to be a cost of development rather than remediation, with remediation being a beneficiary thereof.
The court after considering all of the evidence presented and after viewing the property and taking in consideration the costs of remediation finds the fair market value to be $970,000.00.
As for any windfall, the State of Connecticut, having made a grant of funds to carry out the project plan, also requires an audit of these funds, thereby precluding any windfall. CT Page 12538
Judgment may enter for the defendant in the amount of $875,000.00, the difference between the amount deposited with the Clerk's Office and the Court's finding. Interest on that amount shall be at the just and reasonable rate of six percent.
THE COURT
CURRAN, J. CT Page 12539